IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


CONSOLIDATED PLAINTIFFS, et al

      Plaintiffs,

v.                                          CASE NO. 1:03-cv-01519-MP-AK

CONSOLIDATED DEFENDANTS, et al

      Defendants.

_____/

## O R D E R

      This matter is before the Court on Doc. 63, Unopposed Motion of Consolidated Plaintiffs for Order Approving and Adopting Settlement, Dismissing the Consolidated Cases with Prejudice, and Directing Entry of Final Judgment, and Incorporated Memorandum of Law by Consolidated Plaintiffs. Plaintiffs have also filed a Motion to Exceed the Page Limitation, Doc. 65. The Court has granted that motion, Doc. 65, and considers Plaintiff's Doc. 63 in its entirety of 28 pages. The Court denies Plaintiffs' Unopposed Motion for Order Approving and Adopting Settlement and dismisses the settlement in whole. Plaintiffs have also filed a Motion for Attorneys' Fees and Costs, Doc. 64. That Motion is denied as moot.

## BACKGROUND

      This multidistrict litigation arises from the following Consolidated Cases:

(a) Cathryn Smith, Margaret Jones, and Laura Sprague v. The Progressive Corporation, et al.,

Case No. 1:00-CV-210-MMP (N.D. Fla.,Gainesville Division);

(b) Sharele Dikeman and Michael Whitman v. The Progressive Corporation, Case No. CV 01-1465 JE (D. Oregon, Portland Division);

(c) Paul K. Cooley v. Progressive Insurance Co., Case No. CV 02 2384-S (W.D. Louisiana, Shreveport Division);

(d) Timothy James Carlson v. Progressive Insurance Co., Case No. 02- CV-2552 (N.D. Texas, Dallas Division); and

(e) Gloria Warren v. Progressive Casualty Ins. Co., Case No. 3:03-1176 (N.D. Ala.).

Plaintiffs in the Consolidated Cases alleged, among other things, that the Settling Defendants[1] violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA") by not providing proper notice of adverse action to Policyholders and Quotation Recipients that were denied insurance coverage, had insurance coverage cancelled or were charged or quoted higher premiums based in whole or in part on information contained in their consumer reports.

---

[1] The Settling Defendants are: The Progressive Corporation, Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, Progressive Classic Insurance Company, Progressive Halcyon Insurance Company, Progressive Universal Insurance Company of Illinois, Mountain Laurel Assurance Company, National Continental Insurance Company, Progressive Hawaii Insurance Corporation, Progressive American Insurance Company, Progressive Bayside Insurance Company, Progressive Mountain Insurance Company, Progressive Northeastern Insurance Company, United Financial Casualty Company, Progressive Gulf Insurance Company, Progressive Home Insurance Company, Specialty Risk Insurance Company, Progressive Max Insurance Company, Progressive Consumers Insurance Company, Progressive West Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Paloverde Insurance Company, Progressive Express Insurance Company, Progressive Premier Insurance Company of Illinois, Progressive Southeastern Insurance Company, Progressive County Mutual Insurance Company, Progressive Michigan Insurance Company, Progressive Marathon Insurance Company, and Progressive Security Insurance Company (also collectively referred to as "Progressive").

Plaintiffs sought compensatory damages for negligent violations of the FCRA, punitive damages, and statutory damages for willful violations of the FCRA, and injunctive and declaratory relief.

By Orders dated April 15 and July 3, 2003, the Judicial Panel on Multidistrict Litigation transferred the consolidated cases to this Court for coordinated and consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407.  (Doc. 1 & 19).

The parties, through their respective counsel, conducted intensive investigation and more than four years of litigation of this matter, including extensive document discovery and depositions of fact and expert witnesses.[2]  Class Counsel, on behalf of the named Plaintiffs and Class Members, contend that they have made a thorough investigation of the facts and circumstances underlying the issues raised in this case, the applicable law and the relative strengths of their claims.  Class Counsel has reached the conclusion that it was desirable and in the best interests of the Class Members that the lawsuit be settled on the terms and conditions set forth in the Settlement Agreement, attached to this Order as Exhibit 1.

The settlement provides that (1) Progressive either has or will adopt new procedures for giving notice of adverse action, which will be subject to change by Progressive so long as they are in accordance with state and federal law; (2) each Class Member is entitled to receive one free credit report so long as they filed a claim form prior to November 5, 2004, or 14 days after Progressive emails instructions for filing an electronic claim form; (3) the opportunity to engage in the credit report correction process that is provided by law in accordance with 15 U.S.C. § 1681i; and (4) for Class Members who are current policyholders who find a current error in their

---

[2] The majority of this discovery was conducted by counsel prior to the consolidation of these cases.

credit report, they may petition Progressive to review their file and have Progressive determine

on the basis of its own policies whether the Class Member would have been entitled to a better

rate, and if so, Progressive will provide that rate adjustment.  In exchange for these benefits,

Class Members agree to dismiss and release Progressive from all claims that previously existed,

exist now, or will arise hereafter, "arising out of Progressive's obtaining and using any Consumer

Report in its underwriting and/or rating of Policies, or any state laws or regulations that impose

obligations on users of Consumer Reports, like Progressive, that are similar, or related to, the

obligations imposed on Progressive under the FCRA."  (Exhibit 1).  For their efforts in attaining

this settlement, Class Counsel has agreed to not seek more that $4,500,000 and Defendants have

agreed to not contest that fee request.

      Following this Court's Order preliminarily approving the settlement and certifying the

Class for settlement purposes, Doc. 54, Defendant sent notice of the settlement to more than

7,000,000 current and former progressive clients that were Class Members and known

individuals who were denied insurance on the basis of a credit rating.  Additionally, Defendants

published notice in accordance with this Court's Order.

      Plaintiffs and their respective counsel have agreed to the Settlement Agreement based on

their belief concerning: (i) the substantial benefits to Plaintiffs and the Class under the terms of

the Settlement Agreement; (ii) the uncertainty of being able to prove all of the allegations raised

in the Consolidated Cases, and the uncertainty of being able to overcome Progressive's legal and

factual defenses thereto; (iii) the attendant uncertainties and risks of litigation, especially in

complex actions such as these, as well as the difficulties and delays inherent in such litigation;

(iv) the uncertainty inherent in various theories of damages, even if Plaintiffs could establish

Progressive's liability; and (v) the desirability of consummating the Settlement Agreement

promptly, in order to provide effective relief to Plaintiffs and the Class as soon as possible.

The Class Representatives and their counsel believe that the settlement is fair, reasonable

and adequate because it provides substantial benefits to and is in the best interests of the Class.

Class Counsel do, however, stress their confidence in the merits of their case in their motion for

approval of the settlement.

The Settling Defendants have expressly denied the Plaintiffs' allegations and have

asserted numerous defenses to Plaintiffs' claims. The Settling Defendants do not admit liability

to any Class Member and do not admit liability in any case for any of Plaintiffs' allegations.

Further, Settling Defendants deny any wrongful conduct toward Plaintiffs or the Class, and assert

that the alleged wrongful actions were lawful in all respects.

Progressive and its counsel have agreed to the Settlement Agreement based upon: (i)

Progressive's desire to address any dissatisfaction that its Current Policyholders, Former

Policyholders and Quotation Recipients may have with respect to disclosures allegedly required

to be made by Progressive pursuant to the FCRA by providing to them benefits fairly, adequately

and reasonably to compensate them for any claims they may have (without  acknowledging the

validity of any such claims) as set forth in the Settlement Agreement; and (ii) the desirability of

avoiding the further expense and disruption of its business due to the pendency of the

Consolidated Cases and putting to rest similar allegations that could be raised against Progressive

in other time-consuming and expensive litigation.

Several Objectors filed objections with this Court.  (Doc. 76).  The primary objections

were: (1) the notice provided was constitutionally defective due to its failure to provide

information regarding the right to object and the deadlines and procedure for doing so; (2) the notice was inadequate due to its failure to provide sufficient information concerning the valuation of the settlement; (3) the relief offered by the settlement for the Plaintiffs is inadequate and even illusory; (4) the release granted in the settlement is overly broad;[3] (5) the Class has an internal conflict of interest between the current policyholders and those individuals who are not current policyholders;[4] this conflict, the objectors argue, is demonstrated by the preferential treatment granted to current policy holders; (6) the settlement provides no additional compensation for those Class Members with multiple claims; and (7) the attorney's fees agreed upon by the Class Counsel and the Defendants is excessive in light of the recovery for Plaintiffs.

This Court held a hearing on the final settlement approval on Friday, October 29, 2004. Attorney's for the Class Representatives, Defendants and the Objectors each had an opportunity to be heard.

## DISCUSSION

A district court may approve any settlement only after a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984). "Determining the fairness of the settlement is left to the sound discretion of the trial court and [will not be overturned] absent a clear showing of abuse of that discretion." Bennett, 737 F.2d at 986.

---

[3] The Court does not address this issue. Only one objector, Dawn Wheelihan, raised this concern, and due to the Court's rejection of the settlement on other grounds, it is unnecessary to address this issue.

[4] This group could include individuals who are former policyholders and individuals who have never held a Progressive policy due to Progressive declining coverage based upon a credit report.

When reviewing a settlement, the Court should consider (1) the likelihood of success at trial and the potential recovery; (2) the complexity, expense and duration of the litigation; (3) the terms of the settlement; (4) the notice procedures provided to Class Members and their opportunity to be heard; (5) the judgment of Class Counsel; (6) the substance and quantity of objections to the settlement; and (7) the stage of the proceedings at which settlement was achieved.  See Warren v. City of Tampa, 693 F.Supp. 1051, 1055 (M.D. Fla. 1988).

The objections primarily reach considerations (3), (4) & (6).  Therefore, the Court will initially address the other factors.

Regarding the likelihood of success on the merits, Class Counsel represent that both Plaintiffs and Defendants are very confident in the merits of their argument.  (Doc. 63). Additionally, both parties had filed motions for summary judgment in the original case before this Court, Smith, et al v. The Progressive, et al., 1:00cv210 MMP (N.D. Fla. 2000).  Class Counsel has reminded this Court that several issues are highly contested by the parties and the outcome at trial is uncertain.

The District Court's role, however, is not to try the merits of the case in evaluating a settlement.  Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977). While litigation of this matter has been pending in this Court for four years, the consolidated cases have not been before this Court as long.  Neither party has filed a motion for summary judgment since these matters have been consolidated.  The Court agrees with Class Counsel that at this point, several issues are still contested and that the outcome of the litigation is quite uncertain.

The Court also agrees with Class Counsel that the nature of this litigation is both complex and expensive.  Further, Class Counsel has an extensive background in consumer class action

lawsuits.  The Court acknowledges Class Counsel's opinion that the settlement is fair, reasonable, and adequate.  Finally, the stage of the proceeding does not weigh either in favor of adopting the settlement, or denying it.  While one of the consolidated cases has been before this Court for four years, the entirety of the consolidated cases have been before this Court for only one and a half years.  While that is not an insignificant amount of time, the Court notes that neither party has renewed any motion for summary judgment since the consolidation of these cases.

### (A) Sufficiency of the Notice to Class Members Concerning the Settlement and Their Rights

The Objectors raise two significant objections to the notice provided to Class Members. The first concern is that the notice does not include any information regarding the right to object, the process for objecting, or deadlines to file objections.  The second concern relates to the amount of information contained in the notice and its ability to allow Class Members to make an informed decision.

As to the notice's failure to provide information regarding filing objections, the Objectors point to the fact that nowhere in the notice, nor in the frequently asked questions section of the website created for purposes of this settlement,[5] was there any information regarding objecting to the settlement.  In order to find information regarding objecting, Class Members had to open the court documents section of the website and review this Court's Second Amended Order, Doc. 54, which included the deadlines for filing any objections.  Objectors also point out that the Court specifically ordered that the notice explain procedures for objecting to the Settlement.  Id. Clearly, this was not done.

---

[5] The notice directed Class Members to www.fcraNoticeSettlement.com for further information.

Plaintiffs' Motion for Preliminary Approval, Doc .81[6] p. 15 , specifically states that the notice includes "a statement of the deadlines for filing objections to the settlement . . ."  This is simply not true.  This Court preliminarily approved the settlement and the proposed notice without recognizing that despite Class Counsel's contention, the notice did not contain an explanation of the objection process or deadlines for objecting.  The Defendants did not contest the Plaintiffs motion and no objections to that motion were filed.[7]  The notice went out without containing any information regarding the right to file an objection to the settlement.

Class Counsel contend that the notice was sufficient because it directed Class Members to the settlement website wherein individuals who searched deep enough could link to court documents and if they chose to read them all would find on page 12 of this Court's Second Amended Order Preliminarily Approving Settlement, Doc. 54, the deadlines, rights, and procedure for objecting.  Alternatively, if an individual chose to follow the maze of links to the Class Counsel's website, that individual could find an additional frequently asked questions area that did have information concerning deadlines for objecting to the settlement.  Class Counsel contend that this is sufficient notice.

Class Counsel also make the general argument regarding the Objectors that most of the Class Members who objected do not fully understand why they are objecting nor how their rights are truly effected.  This argument is disingenuous.  Class Counsel argue first that the settlement is fair in part due to the complex nature of the litigation.  Second Class Counsel contend that

---

[6] Doc. 81 is Doc. 137 as originally incorrectly filed in <u>Smith</u> 1:00cv210 MMP.

[7] It is possible that no objections were filed because the motion was not filed in the multidistrict litigation docket, but under one of the consolidated cases, <u>Smith</u>.

directions concerning filing objections were readily available, but only by reading through all prior court orders related to the settlement or following a maze of websites.  Even then, the right to object is not explained.  Despite the complexity of the case and the need to peruse through court orders to determine their rights, Class Counsel then claim that because some Class Members who are objecting are not fully aware of their rights, it demonstrates that the Objectors lawyers are attempting to drum up their own fees, rather that demonstrating that the notice and information provided was in fact confusing and did not in plain language explain the available rights to Class Members.

Finally, Class Counsel also claim that if Class Members had read the settlement which was provided on the website, they could have been apprised of their right to object.  Similar to Class Counsel's contention in its motion for preliminary approval, Doc. 81, this is simply untrue.  The only mention of objections in the entire settlement is contained in Section III, wherein it is noted that Class Counsel shall file its motion for preliminary approval which would include "the setting of deadlines for objections and opt out requests."  (Exhibit 1).

The Supreme Court has stated that when rights of an absent plaintiff are being litigated, the notice provided must describe the action and the plaintiff's rights in that action.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  Due process requires that the right of absent plaintiffs be adequately represented.  In re Jiffy Lube Securities Litigation, 927 F.2d 155,

158 (4th Cir. 1999).

In this case, Class Counsel allege that if Class Members wanted to find out how to object they could have found it by searching.  This misses the point of the necessity to inform the absent Class Members of that right.  Without being told of the right to object, it is difficult to imagine that Class Members could conceivably track down the method and deadlines for objecting.  It is a useless right if the Class Members, whom Class Counsel represent, are unaware of such a right.  The notice provided in the instant case completely failed to adequately apprise the absent Class Members of their right to object.

Further, neither the notice, nor any information readily available on the settlement website provide a valuation of the settlement benefits for the Class Members nor an explanation of basis for the attorneys' fees requested.  This failure, coupled with the failure to provide information regarding objecting, further complicates the analysis regarding the fairness of the settlement.  As noted by the Objectors, the Middle District of Florida, and Class Counsel in their Motion for final approval, the number and type of objections filed is an indication of the fairness of the settlement.  See Warren, 693 F.Supp. at 1055.

The Objectors note that because the objection process is so critical to the fairness evaluation, the failure to provide adequate guidance regarding objections is fatal.  This failure coupled with the inadequate description of the settlement value and attorneys' fees provides little for Class Members to evaluate and decide whether to object even if they were aware of such a right.

Stunningly, Class Counsel do not back down from this argument nor suggest that the number of objections is an insignificant factor.  Rather, Class Counsel point to the fact that there

were only 16 objectors as a sign of resounding support among the other 10,000,000 Class

Members.  Class Counsel point out that only a minuscule amount of people objected when

compared to the size of entire Class, demonstrating the support the other members had for the

settlement.

Class Counsel unfortunately miss the irony of arguing both that the notice's failure to

mention objections is an insignificant problem and then arguing that the lack of objections is a

significant factor supporting approval of the settlement.  This Court does recognize the

contradiction and notes that both of these factors weigh heavily in favor of rejecting the

settlement.

**(B) Sufficiency of the Benefits Provided to Class Members in the Settlement**

The remainder of the objections address the third factor cited in <u>Warren</u>, the terms of the

settlement.  <u>Id.</u>  This factor is similar to two factors that the Eleventh Circuit stated should be

considered in <u>Bennett</u>, (1) the range of possible recovery, and (2) the point on or below that range

where the settlement is fair, reasonable and adequate.  737 F.2d at 986.  The proposed settlement

falls so far below in this regard that it would likely be rejected regardless of the problems with

notice.

The Objectors raise several concerns regarding the benefits provided to Class Members.

The objections as to each specific benefit offered in the settlement are addressed in detail below.

It is necessary to first look at the range of possible recovery for Class Members' claims.  The

Objectors note that FCRA allows for actual, statutory and punitive damages.  15 U.S.C. §§ 1681n

& 1681o.  Actual damages can include both financial loss and compensatory relief for mental

anguish and embarrassment as a result of the adverse action.[8]  See Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982); Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th Cir. 1976).  In order to collect statutory or punitive damages, Plaintiffs must prove a willful violation of the FCRA.  15 U.S.C. 1681n.  If a willful violation is proven, statutory damages are available from $100 to $1,000.  Id.

Class Counsel and Defendants stress that damages are only available if Plaintiffs can prove Defendants willfully violated the FCRA.  They each point out that this was a highly litigated issue.  This Court, as noted above, is not determining the case on its merits at this point.  Essential to the review of the settlement is the fact that the Plaintiffs have sought such statutory and punitive damages for willful violations.  Further, Class Counsel has not withdrawn it claim for such damages.  Therefore, these damages are part of the range of possible recovery that should be considered by this Court.  Additionally, Class Counsel's and Defendants' emphasis on statutory and punitive damages ignores the fact that actual damages are provided for under FCRA Section 1681o.  These damages, while difficult to foresee at this stage, must be included in the possible range of recovery for Class Members.

Class Counsel present the argument that this settlement essentially provides for Class Members everything they would have been entitled to if Progressive had originally followed the FCRA guidelines.  Class Counsel claim this settlement puts the Class Members in as close to, if not the same position, they would have been in had Defendants complied at the outset.  For instance, Class Members would have (1) received notice of the adverse action, (2) notice of the

---

[8] The Court is not giving its opinion on the likelihood of recovery of any specific form of damages.  The Court is only addressing the type of relief that is available.

consumer report that was the basis of that report, (3) the right to a copy of that report, and (4) the right to correct that report.

Class Counsel note that it is impossible to get historical credit reports, so therefore the current report is the best substitute. Within this regard, Class Counsel point out that the purpose of the settlement is to finally fulfill the requirements of the FCRA for the class members. Additionally, Class Counsel now argue that the purpose of these lawsuits is to get what is deserved under the FCRA and that the settlement is a success in that regard.

Class Counsel and Defendants seem to overlook two key points. First, as noted by the inability to locate historical credit reports, the period when compliance was necessary is in the past. Now, Class Members who were denied their rights under the FCRA would have a right to actual damages and possibly statutory or punitive damages. If Defendants violated the FCRA, this right to damages cannot be erased. Additionally, Plaintiffs in these consolidated cases did in fact sue for damages. When considering the range of possible recovery, the Court must consider the possibility that successful Plaintiffs may be able to collect damages.

The second flaw in Class Counsel's reasoning is that it suggests the Class Members received notice of an adverse action and the credit reporting company that was the basis of that adverse action through this lawsuit's settlement notice. This is simply not true. Class Members that received the settlement notice only received notice that they may have had adverse action taken against them, not that it actually took place, nor information concerning when or for which transaction it took place.

In addition to this settlement not truly informing Class Members of whether an adverse action was taken, nor providing the report which was the basis of that action, the third and fourth

items that Class Counsel claim this settlement restores for class members, the right to a free copy of the Class Members' credit report and the right to correct any errors, are either completely illusory or of less value than Class Counsel proffers.  These aspects are discussed in greater detail below, wherein the Court analyzes the specific benefits for Class Members provided by this settlement.

The other objection which addresses the settlement in its entirety is that the settlement does not provide any additional compensation for those Class Members with more than one claim.  Class Counsel and Defendants stressed during the hearing that Defendants only utilize credit reports during the initial policy review phase and that therefore, Class Members could have only been wronged under the FCRA once, so that this one time correction essentially rectifies the problem.  This argument ignores that Sub-Class B in the settlement consists of those people who were denied coverage.  It is very conceivable that those same individuals re-applied over the past seven years and were either denied coverage again or were quoted higher rates due to a credit report.  Nor does that argument recognize that of the 10,000,000 Class Members some may have received a higher rate, accepted Progressive insurance, later switched to another insurance company, only to re-apply to Progressive.  These scenarios could result in multiple violations of the FCRA.  Therefore, Class Counsel and Defendants have not adequately explained the lack of compensation for those individuals with multiple claims.

### (i)    New Progressive Policies Concerning Adverse Action Notice

_____The first benefit offered to Class Members is that Progressive has agreed to change its policies concerning its adverse action notice.  Specifically, "Progressive further agrees that it shall provide an Adverse Action Notice to all New Policyholders who would have received a

lower premium rate but for information contained in a Consumer Report." (Exhibit 1). Unfortunately, as pointed out by Class Counsel and Defendants, Progressive only utilizes credit reports when it first issues new policies. Therefore, for all existing policyholders, according to Defendants, this will offer no value at all to the Class. Further, while this may assist future Progressive clients, it does not remedy any past wrong if Defendants did in fact violate the FCRA.

There are other reasons that this "benefit" offers little to no value. First, it is unclear whether Progressive has already implemented such a policy change. If Progressive has instituted such a change, it cannot be argued that the change that already exists is being offered in consideration for this settlement. In fact, it would seem to be to Progressive's benefit to have already changed its policy in order to avoid a willful violation claim in the future, now that this lawsuit may have put Progressive on notice that its policies might not comply with the FCRA. Further, as noted above, one of Progressive's reasons for policy change is to appease its customers. This rational would exist independently of this settlement.

What is most important, however, is that this "benefit" is illusory in the most basic sense. Progressive has not truly agreed to take any action. The settlement states, "It is agreed and understood between the parties, that the New Adverse Action Procedures used by Progressive are subject to change from time to time, provided that, any changes to the New Adverse Action Procedures comply with applicable state and federal law." (Exhibit 1). Progressive is already obligated to have policies that comply with the law. Also, a promise to change a policy for as long as the promisor sees fit, is no promise at all. There are no safeguards built into this promise. Any future change in these policies does not have to be reviewed by Class Counsel, this Court or

an independent third party.  The settlement does not place any additional limits beyond those already in place in state and federal law, which would limit Progressive in its future alteration of its "New Adverse Action Procedures."

Class Counsel estimate a value for Progressive's policy change of $9,000,000.  The Court cannot find a reasonable basis for placing such an exorbitant value on Progressive's promise to follow the existing law in the manner it sees fit.

**(ii)** **Free Credit Report**

_____ The second benefit offered to the Class Members is the right to a free credit report from Experian Information Solutions, Inc.  Class Counsel proffer that the fair market value of a credit report is $9 and that therefore, the value of this benefit to the entire Class is $90,000,000.  While the free credit report is something that does have value, the Court does not accept Class Counsel's representation that the value is $9 per Class Member and therefore a total benefit to the Class of $90,000,000.

Initially, the Objectors note that recently enacted laws under the Fair and Accurate Credit Transactions Act ("Fact Act") entitle all consumers to one free credit report a year from each of the three major credit reporting agencies.  Class Counsel acknowledges this law change and the right to such a free credit report.  Additionally, the Objectors note, and Class Counsel does not deny, that prior to that the enactment of the FACT Act, consumers were able to gain free credit reports online via websites such as www.freecreditreport.com.

Class Counsel responds by noting that the FACT Act has not become effective throughout the entire country and will not be fully effective until later this year.  Further, the free online credit reports require consumers to register for a pay service that includes a free period

and then cancel that service or they will be charged.  Finally, Class Counsel point out that consumers can benefit from reviewing their credit reports on multiple occasions throughout the year.

All of Class Counsel's arguments in this regard are well taken.  However, they do not completely rebut the argument that the value to the Class of a free credit report is not as large as Class Counsel and Defendants contend.  While the FACT Act is not fully effective,[9] many of the Class Members do already have the right to the free credit report granted by that act.  Other Class Members most certainly have in fact and will in the future take advantage of the free online credit reports without difficulty in cancelling any temporary service.  Further, while it may be advantageous in some instances for individuals to check their credit reports multiple time throughout the year, the value of such a benefit could have decreasing value to the Class Members.

The other flaw in the value attached to the free credit report comes from the limitation placed upon the Class Members in receiving such a report.  For those Class Members that have already filed a claim, they will received their free report within 60 days of the approval of the settlement.  For those individuals that have not yet filed a claim, Progressive will issue instructions on how to file a claim electronically and the Class Members will have 14 days to electronically file a claim and request a free credit report.  Essentially, if this settlement were approved, Class Members would receive their credit reports in about one to two months.  There is no option to receive the report at any other time throughout the year.

This aspect also devalues the credit report.  It is entirely conceivable that many Class

---

[9] The FACT Act will be fully effective nationwide as of September 1, 2005.

Page 19 of 23

Members would have very recently, in this new year or at the end of last year, already received a credit report from some source, if not one from each major reporting agency. While there is a value to receiving multiple reports, that value is diminished when the Class Members are handcuffed into receiving the report on Progressive's timetable, regardless of whether the Class Members have recently received a credit report recently or not. Part of the $9 value of the credit reports that can be purchased is the value of attaining the report when you need it. A report that is merely redundant or is provided at an otherwise inconvenient time, does not carry the same value.

While the free credit report is a true benefit to the Class Members, the Court does not accept Class Counsel's valuation. The value to the Class is considerably less than $90,000,000.

**(iii)**   <u>**The Right and Opportunity to Engage in the Credit Report Correction Process**</u>

The third "benefit" conferred on the Class Members is the right, following their receipt of the free credit report, to take advantage of the credit correction process specifically outlined in FCRA section 1681i. This provides no benefit to the Class at all. The settlement states that Experian Information Solutions, Inc. will follow the legal obligations it <u>already</u> has in providing credit correction. Listing this as a benefit to Class Members is simply adding filler. Such a reassurance of existing rights is not a benefit and is irrelevant. This third "benefit" adds no value to the settlement.

**(iv)**   <u>**Potential  Premium Adjustment for Current Policyholders**</u>

The final benefit offered by the settlement is that those Class Members who are current policyholders that find an error on their free credit report and have that error corrected, <u>may</u> be

entitled to a premium adjustment on their current policies.  No premium increases will be made on the basis of the correction process.

Objectors raise several concerns regarding this benefit to the Class.  First, the Objectors point out that valuation of this benefit is very difficult because it is impossible to estimate how many Class Members will be able to take advantage of this option or the amount that will actually be refunded for those that do qualify.  Second, Progressive's obligations under this benefit are unclear, which decreases the value to the Class Members.  Finally, the Objectors point out that this benefit creates an intra-Class conflict between current policyholders and those Class Members that are not current policyholders.

Class Counsel recognize the incredible difficulty determining the value of an unforeseeable number of rate adjustments for unforeseeable amounts.  For this reason, Class Counsel does not place any value on this benefit.  Class Counsel does point out though that this benefit goes beyond any remedies available under the FCRA, as policy adjustments were not contemplated under that act.

The Objectors are correct that even if this benefit did confer a calculable value, that value is suspect because of the procedures for realizing the rate reduction.  This benefit suffers from similar shortcomings as Progressive's agreement to institute new policies.  The Class Member who corrects an error and brings the correction to Progressive only has the right to take part in a procedure to determine whether or not a rate reduction is available.  Ultimately, it is Progressive that will determine if a better rate would have been quoted absent the error.  The mechanism for determining the adjustment is wholly under Progressive's control.  Further, there is no oversight of this benefit.  Progressive is not obligated to publish the basis for its decisions prior to making

these determinations.  Neither Class Counsel, this Court, nor a third party has been assigned to oversee the rate reduction payout.

Defendants responded in open court that Progressive uses a preset formula mechanism for determining rates and that therefore, there is truly no discretion involved.  While Progressive may use such a formula, it has not provided that formula, nor made assurances that the formula will not be changed in the interim.  Also, any formula Progressive uses must involve certain variables that are adjusted at Progressive's discretion.  These adjustments would alter the amount of rate reductions available.  There is no oversight provided for such adjustments nor an appeal process established for Class Members that are told they do not qualify for the rate reduction.  A Class Member that finds a credit report error, yet is told by Progressive that he/she would not have been offered a better rate, has no recourse.  All of these factors taken together greatly diminish the significance of this benefit.

The other primary objection to this benefit is that it unfairly discriminates between Class Members.  The Class is subdivided by those individuals that received no obligation quotes and those individuals who either have or had policies with Progressive.[10]  Yet, this benefit is only conferred on current policyholders.  There is no subclass of current policyholders only. Objectors point out that this creates a conflict among the Class and possibly between the Class Representatives, Class Counsel and the absent Class Members.  Class Counsel does not provide any articulated basis for this discrimination.

---

[10] While not addressed in the objections, the Court notes that it is possible for Class Members to be members of both sub-classes.

(v)      **Attorneys' Fees**

_____The final objection raised is that the attorneys' fees agreed to by both the Class Counsel

and the Defendants are too great in relation to the value of the settlement.  Some Objectors even

raised the issue of a conflict of interest and claimed that the $4,500,000 attorneys' fees were

evidence of collusion to the detriment of the absent Class Members.  This Court does not need to

reach this issue, however, because the settlement is rejected and the attorneys' fees provision is a

part of that settlement.

## **CONCLUSION**

The proposed settlement essentially confers upon the Class Members only the benefit of a

free credit report that must be collected within, at most, two months following approval of the

settlement.  The other benefits provided to the Class are either completely illusory or negligible

when the process of collecting those benefits is considered.  In consideration for these meager

benefits, Class Members must agree to fully release Defendants from any and all past, current or

future claims, concerning Defendants use of credit reports.  For their efforts in attaining these

benefits, Class Counsel will receive $4,500,000.  This Court finds that this settlement is not fair,

reasonable, and adequate.

**ORDERED AND ADJUDGED:**

1.       Plaintiffs' Motion to Exceed Page Limitation, Doc. 65, is GRANTED.

2.       Plaintiffs' Motion to Approve and Adopt the Settlement, Doc. 63, IS DENIED.
         The settlement is rejected.

3.      Plaintiffs' Motion for Attorneys' Fees and Costs, Doc. 64, is DENIED as moot.


**DONE AND ORDERED** this _ *23rd* _ day of February, 2005.


_____ *s/Maurice M. Paul* _____
Maurice M. Paul, Senior District Judge