UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: THE PROGRESSIVE INSURANCE | ) | MDL DOC. No. 1519 |
| CORPORATION UNDERWRITING | ) | Consolidated Cases: |
| AND RATING PRACTICES LITIGATION | ) | 1:00cv0210; 3:01cv1465; |
| | ) | 3:03cv0302; 5:02cv2384; |
| | ) | 3:02cv2552; 3:03cv1176; |
| | ) | 4:05cv1647; 2:05cv1900; |
| | ) | and 1:05cv0150. |
| | ) | |
| | ) | Judge: Maurice Paul |

**PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS
AND FOR PRELIMINARY APPROVAL OF AMENDED SETTLEMENT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs Cathryn Smith, Margaret Jones, Laura Sprague, Gloria Warren and Paul Cooley ("Plaintiffs") submit this Motion for Certification of Settlement Class and Preliminary Approval of Amended Settlement and Memorandum in Support ("Motion"). The Motion requests (1) that the Court certify for settlement purposes the class described herein, and (2) that the Court grant preliminary approval of the proposed amended settlement agreement (hereinafter "Amended Settlement") set forth in the Amended Settlement dated _____ (attached hereto).[1]

---

[1] The Amended Settlement in its entirety, including the definitions delineated therein, is hereby incorporated by reference into this motion and is attached hereto for reference. More specifically, for any capitalized term not defined herein, the definition of the term in the Amended Settlement is incorporated.

1

## I.     INTRODUCTION

This is a class action against the settling Defendants[2] ("Progressive" or "Defendants") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA" or "the Act."). On December 8, 2000, *Cathryn Smith, Margaret Jones, and Laura Sprague* v. *The Progressive Corporation, et al.*, Case No. 1:00-CV-210-MMP (N.D. Fla., Gainesville Division) (hereinafter "Jones Plaintiffs") was removed to this Court. The Plaintiffs' complaint alleged that Defendants violated the notification and disclosure requirements of FCRA in their underwriting and rate-setting procedures for policies of insurance.

On April 16, 2003, the Judicial Panel on Multidistrict Litigation transferred cases alleging similar FCRA violations from around the country to this Court for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1404. This multidistrict litigation includes the following Consolidated Cases:

---

[2]The Progressive Corporation, Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, Progressive Classic Insurance Company, Progressive Halcyon Insurance Company, Progressive Universal Insurance Company of Illinois, Mountain Laurel Assurance Company, National Continental Insurance Company, Progressive Hawaii Insurance Corporation, Progressive American Insurance Company, Progressive Bayside Insurance Company, Progressive Mountain Insurance Company, Progressive Northeastern Insurance Company, United Financial Casualty Company, Progressive Gulf Insurance Company, Progressive Home Insurance Company, Specialty Risk Insurance Company, Progressive Max Insurance Company, Progressive Consumers Insurance Company, Progressive West Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Paloverde Insurance Company, Progressive Express Insurance Company, Progressive Premier Insurance Company of Illinois, Progressive Southeastern Insurance Company, Progressive County Mutual Insurance Company, Progressive Michigan Insurance Company, Progressive Marathon Insurance Company, Progressive Security Insurance Company and their affiliated companies ("Progressive" or "Defendants").

a.) Cathryn Smith, et al. v. The Progressive Corporation et al., Case No. 1:00-CV-210-MMP (N.D. Fla.);

b.) Paul K. Cooley, et al. v. Progressive Ins. Co., Case No. CV 5:02 2384-S (W.D. La.);

c.) Gloria Warren v. Progressive Casualty Ins. Co., Case No. 3:03-1176 (N.D. Ala.);

d.) Sharele Dikeman, et al. v. Progressive Halcyon, et al., Case No. 3:03cv00302 (D. Ore);

e.) Timothy James Carlson v. Progressive Ins. Co., Case No. 3:02-CV-2552 (N.D. Tex.);

f.) Sharele Dikeman, et al. v Progressive Corp., Case No. 3:01-01465-BR (D. Ore);

g.) Seth Silverman, et al. v. The Progressive Corp., et al., Case No. 4:05-CV-1647 (S.D. Tex.);

h.) Ruby Johnson, et al. v. The Progressive Corp., et al., Case No. 2:05-CV-1900 (E.D. La.); and

i.) Julius Dunmore, et al. v The Progressive Corporation, Case No 1:05-CV-150-SPM (N.D. Fla.)

The parties previously reached an agreement to settle the pending claims.  On July 29, 2004, the Court entered an Order preliminarily approving the original Settlement (hereinafter "Prior Settlement") and certifying the class for Prior Settlement purposes.  On February 23,

2005, the Court entered an Order denying final approval of the proposed Prior Settlement. In its Order, this Court explained the issues with which it found fault. The parties began renegotiating the Prior Settlement immediately thereafter, taking into consideration each problem the Court identified.

On March 30, 2006, the Court heard from all parties, including counsel for the individuals who objected to the Prior Settlement, regarding a proposed Amended Settlement reached between the Defendants and Ms. Warren, Mr. Cooley and the Jones Plaintiffs. On March 31, 2006, the Court entered an Order finding "that a sufficient basis exists for this matter to move forward with the settlement proceedings." (Docket # 210).

Progressive has changed the language in the Adverse Action Notices it sends to consumers. Plaintiffs submit that the changes reflect more fully the letter and spirit of the Adverse Action Notice requirements embodied in the FCRA, 15 U.S.C. § 1681m. Moreover, 15 U.S.C. § 1681(h)(8) was added to the FCRA and became effective December 1, 2004. Several courts have found that this section rescinds the private cause of action for violations of § 1681m. Each Class member[3] will retain the right to enforce the terms of the Amended Settlement, thus giving this Court jurisdiction that otherwise does not exist, to ensure that

---

[3] The "Class" is defined in the Amended Settlement as: All residents of the United States of America who are members of Sub-Class A or Sub-Class B, defined as follows: Sub-Class A: shall include all Current Policyholders and Former Policyholders where (i) such Policyholders would have received a lower premium rate from Progressive or would not have had a policy canceled but for the information contained in a Consumer Report and (ii) the Policy inception date for the Current Policyholder or Former Policyholder occurred between January 1, 1997 and December 1, 2004; Sub-Class B: shall include all Quotation Recipients from January 1, 1997 to the Preliminary Approval Date.

Progressive continues to provide Adverse Action Notices to the Class members when required.

The Amended Settlement will provide several other important benefits. Each Class member that is or was a Policyholder any time after 2001 will receive a mailed Notice alerting them that they are Class members entitled to benefits under the Amended Settlement. A credit brochure will accompany the mailed Notice that contains important information about consumers and their credit including: what is in a credit report; how credit reports and credit scores are used; who has access to a consumer's credit information; and where consumers can find additional information about their rights.

All Class members will have the right to receive a free Credit Report from Experian. Although not required by federal or state law, each Class member will also be entitled to a Plus® credit score from Experian together with an analysis of the items in the Credit Report that are increasing and decreasing the Class member's credit score. Experian charges consumers $14.50 for the Credit Report, credit score and analysis. Moreover, Class members who are or were Policyholders who had mistakes in their Credit Reports may be entitled to receive monetary compensation up to $225 if an inaccurate credit report affected their insurance premiums or resulted in cancellation of their Policy. Current Policyholders may also have their future premiums reduced if their credit information, as corrected, improves their risk category. A toll-free telephone number and a website containing information about the Amended Settlement will also be available to assist Class members. Class members who do not wish to receive these benefits and be bound by the Amended Settlement shall be

afforded the right to exclude themselves from the Class. Additionally, cost of Notice, administration costs and Class counsel's attorneys' fees will be paid by Progressive and will not be deducted from the value of the relief available to the Class members.

The proposed Amended Settlement Class meets the requirements of Rule 23 for certification, and the Amended Settlement is fair, reasonable and adequate. The Notice plan is reasonably calculated to give the best practicable notice to members of the Class. Thus, the Court should certify the Class as requested, grant preliminary approval to the Amended Settlement and direct that Notice be given to the Class.

## II. THE PROPOSED AMENDED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

Plaintiffs seek certification of a class defined as follows (hereinafter "Class"):

All residents of the United States of America who are members of Sub-Class A or Sub-Class B, defined as follows:

> Sub-Class A: shall include all Current Policyholders and Former Policyholders where (i) such Policyholders would have received a lower premium rate from Progressive or would not have had a policy canceled but for the information contained in a Consumer Report and (ii) the Policy inception date for the Current Policyholder or Former Policyholder occurred between January 1, 1997 and December 1, 2004;
>
> Sub-Class B: shall include all Quotation Recipients from January 1, 1997 to the Preliminary Approval Date.

This Class meets all of the Rule 23 requirements for certification and should be conditionally certified by the Court.

### A. The Four Prerequisites of Rule 23(a) Are Clearly Satisfied.

Rule 23(a) contains four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed.R.Civ.P. 23(a). In order for a class to be certified, it must satisfy each of these four prerequisites and, in addition, must fall within one or more of the three subdivisions of Rule 23(b). This Class satisfies all of the requirements of Rule 23(a) as discussed by this Court in *In re Commercial Tissue Prods.*, 183 F.R.D. 589 (N.D. Fla. 1998).

#### 1. Numerosity.

The parties estimate that the Class for which certification is sought contains approximately 10 million consumers. Thus the requirement of numerosity set forth in Rule 23(a)(1) is clearly met.

#### 2. Commonality.

The second prerequisite for maintaining a case as a class action is that there be "questions of law or fact common to the class. . ." F.R.Civ. P 23(a)(2). Commonality is satisfied when there is at least one issue whose resolution will affect all or a significant number of the putative class members. *Drayton v. Western Auto Supply Co.*, 203 F.R.D. 520, 526 (M.D. Fla. 2000). Federal courts recognize that the requirement under Rule 23(a)(2) that "questions of law or fact common to the class" exist is to be read liberally. *See*, *e.g. Armstead v. Pingree*, 629 F.Supp. 273, 280 (M.D. Fla. 1986).

In this case, there are several common questions of law and fact arising out of Progressive's conduct. Among the common issues are the following:

7

(A) Whether the Adverse Action Notice sent to certain members of the Class satisfied the notice requirements set forth in 15 U.S.C. § 1681m;

(B) Whether Progressive negligently violated the Adverse Action Notice requirements of the FCRA;

(C) Whether Progressive willfully violated the Adverse Action Notice requirements of the FCRA;

(D) Whether the members of the Class are entitled to an award of punitive damages;

(E) Whether the members of the Class are entitled to recover statutory damages; and

(F) Whether members of the Class are entitled to common damages for negligent violations of the FCRA, based on the lost value of the opportunity to receive a free copy of the Consumer Report.

### 3. Typicality.

The third prerequisite for maintaining a class action is that the claims of the class representatives be "typical of the claims or defenses of the class..." F.R.Civ.P. 23(a)(3). The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524 (M.D. Fla. 1996). "Typicality" does not mean that the claims of the representative parties must be identical to those of the absent class members. *See In re Commercial Tissue Products*, *supra* at 593. Rather, courts have held that typicality is satisfied where the representative plaintiff's claims arise out of the same event or course of conduct as the other class members' claims and are based on the same legal theory. *Id* at 594; *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992); *Drayton,* 203 F.R.D. at 527.

The claims of the named Plaintiffs in this case are typical of the claims of the members of the Class. Progressive's challenged practices are uniform with regard to all members of the Class. For each named Plaintiff, Progressive set the insurance premium for the Plaintiff or canceled their policy based in whole or in part on information from a consumer report. Plaintiffs maintain that no named Plaintiff received an adequate Adverse Action Notice as required by 15 U.S.C. § 1681m. Plaintiffs maintain that such violations are and were a result of Progressive's uniform policies and procedures. Thus, each Plaintiff has claims that "should be 'reasonably expected' to be raised by members of the proposed class. *In re Commercial Tissue Products, supra* at 593.

### 4. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The named plaintiffs must show that they have interests common, and not antagonistic, to the interests of the class and that plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *In re Commercial Tissue Products, supra* at 594-595; *CV Reit, Inc.*, *supra* at 698. The named Plaintiffs have pursued their claims vigorously. Cathryn Smith, Margaret Jones Laura Sprague, Gloria Warren and Paul Cooley have pursued their claims for several years. The court must also determine whether plaintiffs' counsel possess the qualifications and experience to pursue the legal claims and exhibit the desire to prosecute vigorously a class action. Rule 23(g), Fed. R. Civ. P. (2004); *In re Ins. Mgmt. Solutions Group, Inc.,* 206 F.R.D. 514, 516 (M.D. Fla. 2002). As the Court is fully aware and as is evidenced by the Court's file in *Smith, et al. v. Progressive*, Plaintiffs' counsel have committed

9

the necessary resources to investigating and pursuing the claims of the absent members of the Class; have repeatedly exhibited extensive knowledge of the law applicable to the Class members' claims; are committing the resources necessary to fully protect the members of the Class and are experienced in litigating complex cases such as this. The members of the Class are more than adequately represented by the Plaintiffs and their counsel in this cause.

> **B.     The Class Should be Certified Under Rule 23(b)(3) Because the Common Questions Predominate and A Class Action Is Superior To Other Available Methods For Resolving This Controversy.**

If the prerequisites of Rule 23(a) are satisfied, an action can be maintained as a class action if it falls within one of the three subdivisions of Rule 23(b). Rule 23(b)(3) provides as follows:

> (b) **Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> ....
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication fo the controversy....

Fed. R. Civ. P. 23(b).

In this case, the issues of fact and law common to the Class predominate over any individual issues. Furthermore, the large size of the Class and the small amount of damages involved in each individual claim make a class action the best way to fairly and efficiently resolve this controversy. Thus, this case can and should be certified as a class action pursuant to Rule 23(b)(3).

1.     **Common Issues Predominate.**

Plaintiffs' claims satisfy the requirements of Rule 23(b)(3) that common questions of law or fact predominate over individual questions and that a class action is superior to other available methods of adjudication. As the Supreme Court noted in *Amchem Products, Inc v. Windsor*, 521 U.S. 591, 624 (1997), "predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." As noted previously, the claims of the class members arise from Progressive's actions, all of which were taken as a matter of company-wide practice and procedure. Plaintiffs alleged that Progressive violated the FCRA requirements by failing to provide adequate Adverse Action Notice to consumers. Thus, the Class members' claims arise from a nucleus of operative facts and involve questions of law common to all members of the Class. Individual issues with respect to the claims asserted are virtually non-existent.

2.     **A Class Action Is Superior To Other Available Methods of Resolution**

Generally, a class action is superior to other methods of adjudication where the individual claims would yield such small recoveries that individual actions would not be economically viable. *See*, *e.g. In Re Inter-Op Hip Prophesies Liability Litigation,* 204 F.R.D. 330, 348 (N.D. Ohio 2001) ("The 'most compelling rationale for finding superiority in a class action...[is] the existence of a negative value suit'...Negative value claims are claims in which the costs of enforcement in an individual suit would exceed the expected individual recovery.") The United States Supreme Court explicitly recognized this "negative value" factor in its decision in *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591 (1997). There, the Court observed that a principle

11

justification for class actions is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* at 617, (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). This case, of course, is the paradigm of a negative value case. The size of each class member's damage claim, whether for actual damages for negligent conduct or statutory damages for willful conduct, is too small to make individual litigation an economically viable alternative. In fact, few if any individual actions have ever been brought against Defendant for the violations at issue in this case. A class action is not only the superior method for resolving this controversy, it is the *only* viable way for the Plaintiffs to seek redress for the violations of the Fair Credit Reporting Act.

The superiority of proceeding as a class action is further demonstrated by the efficiencies inherent in adjudicating the common issues in a single action. Instead of multiple cases involving the same facts and the same issues, needlessly wasting judicial resources, there is a single action in which those disputes can find resolution.

### III. THE AMENDED SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23(e) AND SHOULD BE PRELIMINARILY APPROVED

The law generally favors and encourages the settlement of class actions. *Ressler v. Jacobson*, 822 F.Supp. 1551, 1552 (M.D.Fla.1992); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960). In considering a proposed settlement of a class action, federal courts normally follow a two-step approach. In the first step, the court reviews the proposed

settlement for obvious deficiencies. If it finds none and finds that the terms of the proposed settlement are within the range of what might be approved, then the court schedules a formal fairness hearing, and directs that Notice to class members be provided. *Manual for Complex Litigation*, § 30.41(3rd. ed. 1995). In the second step, the court conducts a fairness hearing, considers evidence and arguments offered supporting and opposing the settlement and decides whether to grant final approval of the settlement. Id. The decision to approve or reject the settlement is committed to the sound discretion of the trial court. *Detroit Police Officers Assoc. v. Young*, 920 F.Supp. 755 (E.D. Mich. 1995).

In deciding whether to grant preliminary approval, the Court should be guided by the standard embodied in the *Manual for Complex Litigation*. It suggests that an approval should be given and notice ordered "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies..." *Manual for Complex Litigation, supra*.

Here, there are no obvious deficiencies in the Amended Settlement, there is a *prima facie* showing that the Amended Settlement is fair, reasonable and adequate, and the plan for notifying Class members is constitutionally appropriate. Further, on March 30, 2006, the Court conducted a hearing at which time argument for and against the proposed Amended Settlement was presented, together with affidavits filed by Plaintiffs' counsel. The Court has thus had an opportunity to consider the potential benefits provided by the proposed Amended Settlement. Accordingly, the Amended Settlement should be preliminarily approved and Notice to the Class should be ordered.

### A. There Are No Obvious Deficiencies in the Amended Settlement.

According to the *Manual for Complex Litigation*, factors that might constitute "obvious deficiencies" or otherwise cause a court to doubt the fairness of a proposed settlement include "unduly preferential treatment to class representatives or to segments of the class, or excessive compensation for attorneys. . ." *Manual for Complex Litigation*, §30.41 (3rd ed. 1995). There are no such factors present in the Amended Settlement before the Court. The compensation proposed for Class Counsel is not excessive. As will be demonstrated in Plaintiffs' Motion for Award of Fees and Costs which will be filed separately prior to sending Notice to the Class, the fees sought in the Amended Settlement are fair and reasonable for investigating the facts, researching the law, litigating the case and negotiating the settlement of the cases. Further, there are no other circumstances which would suggest that the Amended Settlement is deficient. To the contrary, the Amended Settlement is the result of lengthy and thorough negotiations, conducted at arms length, by highly skilled counsel.

### B. The Amended Settlement is Fair, Reasonable and Adequate.

In deciding whether to approve a proposed settlement, the reviewing court must ultimately find that the proposed settlement is "fair, reasonable and adequate." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) *cert. denied sub nom.*, *Jones v. Clark Equip. Co.*, 480 U.S. 934 (1987), citing, *Officers for Justice v. Civil Svc. Comm'n.*, F.2d 615, 625 (9th Cir. 1982). At this juncture, it is only necessary for the court to conclude that the settlement falls "within the range of possible approval. . ." *Manual for Complex Litigation*, §30.41 (3$^{d}$ ed. 1995).

The Amended Settlement herein puts Class members in a position that far exceeds the position in which they would have been in had Progressive fully complied with the Act. The FCRA essentially provides that a person whose credit report is used adversely to the consumer's interests is entitled to be informed of the following: that an adverse action was taken; the name of the consumer reporting agency from which Progressive collected the information that resulted in the adverse action; the right to obtain a copy of the Consumer Report free of charge; and the opportunity to correct mistakes that might be adversely affecting the consumer's interests. The Amended Settlement restores those lost rights to Class members and provides additional benefits not provided for under the FCRA. Under the Amended Settlement, they may obtain free copies of their Consumer Reports, a Plus® credit score and an analysis of the Class member's credit information. Additionally, eligible Policyholders may obtain payments based on calculated lowered premiums available after correction of certain mistakes in their Consumer Reports. Additionally, members of the Class entitled to receive a deduction in premiums after correcting mistakes in their Consumer Report will receive the benefit of a correct Credit Report going forward. Also, each Class member will receive a copy of the Credit Brochure providing them with important information about their rights as consumers.

It is not possible to put every Class member back into the exact situation he or she was in when the alleged violation occurred as the original Consumer Report is not available to the consumer. It is possible, however, through this Amended Settlement to provide substitute relief now that closely mirrors the benefits and further supplements the available benefits lost through the alleged violations of the FCRA. In addition, the other aspects of the Amended Settlement,

15

including the Notice mailed to the members of the Class, the credit brochure, the published Notice that will appear in a number of widely read nationwide publications, the web site assistance for Class members and the toll-free telephone line assistance, add to the overall benefits provided to Class members. Last, but certainly not least, is the value obtained for the Class through the improved FCRA procedures agreed to by Defendants.

The Amended Settlement is "within the range of possible approval" and thus meets the standard for preliminary approval set forth above. More importantly, it is "fair, reasonable and adequate" and thus should receive final approval from the Court at the appropriate time.

### C. The Notice Program is Reasonable.

Rule 23(e) specifies that "[T]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement,..." Fed. R. Civ. P. 23(e). Due process likewise requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied,* 423 U.S. 864 (1975).

The Notice Plan, which is described in Section IV of the Amended Settlement, fully complies with Rule 23(e) and with the requirements of due process. The Notice is written in plain English and includes: (i) a description of the Class, (ii) a description of the proposed Amended Settlement, (iii) the identity of Class Counsel, (iv) the Fairness Hearing date, (v) a statement of the deadlines for filing objections to the Amended Settlement, for submitting a claim, and for

filing requests for exclusion, (vi) the consequences of such exclusion, (vii) the consequences of remaining in the Class, (viii) a statement of Progressive's responsibility for Class Counsel's fees and expenses and (ix) how to obtain further information. The Notice will reference a toll-free number and internet web site for purposes of providing more information about the Amended Settlement and the claims process.

In addition to the Class receiving mailed Notices (as specified in the Amended Settlement), Notice will be published in several nationwide publications as described in Section IV.C.1 of the Amended Settlement. All such Notices will reference a web site and toll-free telephone number where members of the Class can obtain more detailed information about the Amended Settlement. The parties have created a comprehensive notification plan that will reach the most Class members reasonably possible.

The form and content of the Notice, together with the manner of dissemination set forth above, is reasonably calculated to reach and inform all Class members. It is the "best notice practicable" under the circumstances and more than satisfies the requirements of due process and Rule 23.

### III.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court issue an order certifying for settlement purposes only the Class described above, granting preliminary approval of the Amended Settlement and direct that Notice be given as set forth in the Notice Plan.

                        JAMES, HOYER, NEWCOMER &
                         SMILJANICH, P.A.
                        */s/* Terry A. Smiljanich
                        Terry A. Smiljanich
                        Florida Bar No. 145359
                        Kathleen Clark Knight
                        Florida Bar No. 047120
                        4830 W. Kennedy Blvd., Suite 550
                        Tampa, FL 33609
                        *Lead Counsel for Plaintiffs*