**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

| | |
|---|---|
| RE: THE PROGRESSIVE CORPORATION ) | Docket No. 1519 |
| INSURANCE UNDERWRITING AND ) | Consolidated Cases: |
| RATING PRACTICES LITIGATION ) | No. 1:00cv0210; No. 3:01cv1465; |
| | No. 3:03cv0302; No. 5:02cv2384; |
| | No. 3:02cv2552; No. 3:03cv1176; |
| | No. 4:05cv1647; No. 2:05cv1900; |
| | and No. 1:05cv0150. |
| | Judge: Maurice Paul |

## AMENDED SETTLEMENT AGREEMENT

Lead Counsel for Plaintiffs (defined below) and Counsel for the Progressive Defendants (defined below) (collectively, the "Parties") mutually enter into this amended agreement for the settlement of all claims asserted by the Plaintiffs in the Consolidated Cases (defined below) and comprising the above-captioned multidistrict litigation (the "Action") on the terms set forth below (the "Settlement Agreement").

The parties have entered into this agreement for the purpose of amending the Prior Settlement, signed on July 23, 2004, by the parties. The parties have included new and different language in the proposed Class Notice herein, and have both clarified previous terms in the original settlement agreement and added certain new provisions.

### I. DEFINITIONS

The definitions contained herein shall apply only to this Settlement Agreement and shall not apply in any other context including, but not limited to, any other agreement between the Parties. Each defined term stated in a singular form shall include the plural form and each defined term stated in the plural form shall include the singular form.

A. "Adverse Action Notice" shall have the same meaning as that term is used in the Fair Credit Reporting Act, 15 U.S.C. § 1681m.

B. "Class Administrator" shall mean Garden City Group.

C. "Class Counsel" shall mean those plaintiffs' attorneys of record in the Consolidated Cases comprising this Action who have executed this document.

D. "Class Members" or "Class" shall mean the persons defined in Article IV.A of this Settlement Agreement.

E. "Consolidated Cases" shall mean the following: *Cathryn Smith, et al. v. The Progressive Corporation et al.*, Case No. 1:00-CV-210-MMP (N.D. Fla.); *Sharele Dikeman, et al. v Progressive Corp.,* Case No. 3:01-01465-BR (D. Ore); *Sharele Dikeman, et al. v. Progressive Halcyon, et al.*, Case No. 3:03cv00302 (D.

1

Ore); *Paul K. Cooley, et al. v. Progressive Ins. Co.*, Case No. CV 5:02 2384-S (W.D. La.); *Timothy James Carlson v. Progressive Ins. Co.*, Case No. 3:02-CV-2552 (N.D. Tex.); *Gloria Warren v. Progressive Casualty Ins. Co.*, Case No. 3:03-1176 (N.D. Ala.); *Seth Silverman, et al. v. The Progressive Corp., et al.*, Case No. 4:05-CV-1647 (S.D. Tex.); *Ruby Johnson, et al. v. The Progressive Corp., et al.*, Case No. 2:05-CV-1900 (E.D. La.); *Julius Dunmore, et al. v The Progressive Corporation*, Case No 1:05-CV-150-SPM (N.D. Fla.)

F. "Consumer Report" shall have the meaning as set forth in 15 U.S.C. § 1681(a), and "Credit Report" shall refer to those reports on consumers prepared by credit reporting agencies and made available to such consumers under the provisions of 15 U.S.C. §§ 1681, et seq.

G. "Consumer Reporting Agency" shall have the same meaning as set forth in 15 U.S.C. § 1681a(f).

H. "Corrected Credit Report" shall mean a credit report that has been corrected by qualifying Class Members pursuant to the provisions of the FCRA and resubmitted by them to Progressive for recalculation of premiums.

I. "Court" shall mean the United States District Court, Northern District of Florida, Gainesville Division.

J. "Credit History Information" shall mean credit information on individuals that Consumer Reporting Agencies provide to consumers in accordance with the Fair Credit Reporting Act.

K. "Credit Information" shall mean the free Initial Credit Report and PLUS Score® provided to claiming Class Members under the terms and conditions of this Settlement Agreement.

L. "Current Policyholder" means a Policyholder under a Policy that is in effect at the time a Notice of Class Action Settlement is sent to the Policyholder.

M. "Experian" shall mean, collectively, Experian Information Solutions, Inc., a GUS P.L.C. subsidiary, and Experian's wholly-owned subsidiary, ConsumerInfo.com, Inc.

N. PLUS Score®" shall mean the Experian credit score and explanatory information sent by Experian, at Progressive's expense, to Class Members as part of this Settlement Agreement. A copy of a sample PLUS Score® is attached hereto as Exhibit A.

O. "FCRA" shall mean the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

P. "Final Judgment" shall mean the date upon which the Court approves this Settlement Agreement and enters Final Judgment.

Q. "Financial Responsibility Category" means the category of financial responsibility into which Progressive places a Quotation Recipient or Policyholder, based on the credit score of that individual as determined by Progressive in connection with the underwriting or rating of insurance.

R. "Former Policyholder" means a Policyholder under a Policy that is not in effect at the time a Notice of Class Action Settlement is sent to the Policyholder.

S. "Initial Credit Report" shall mean the credit report containing Credit History Information sent by Experian, at Progressive's expense, to Class Members as part of this Settlement Agreement. A copy of a sample Initial Credit Report is attached hereto as Exhibit A.

T. "Lead Counsel" shall mean the law firm of James Hoyer Newcomer & Smiljanich, P.A., as set forth in the Case Management Report on file in this Action.  Lead Counsel represents that it has the necessary authority to enter into this Settlement Agreement on behalf of the Plaintiffs.

U. "New Policyholders" means those persons issued new insurance Policies after the Notice Cutoff Date.

V. "Notice Cutoff Date" shall be the dates listed on Exhibit B for specific lines of insurance by state.

W. "Notice Plan" shall mean the forms of Notice of Class Action Settlement (the "Mailing Notice", attached as Exhibit C, and "Publication Notice" attached as Exhibit D; (the Mailing Notice and the Publication Notice shall collectively be referred to as the "Notice") which shall be provided to Class Members as specified in Article IV.B-C and the notice procedures set forth in Article IV of this Settlement Agreement.

X. "Plaintiffs" shall mean the named Plaintiffs represented by Class Counsel in the Consolidated Cases comprising this Action.

Y. "Policy" means each policy of insurance and all renewals of that policy (which shall collectively be but a single "Policy" for purposes of this Settlement), so long as the policy is for private passenger automobile, motorcycle, travel trailer, boat, mobile home, snowmobile, motor home, or sole proprietor's commercial vehicle policy of insurance issued by Progressive.  Except as otherwise described herein, the term "Policy" expressly excludes any commercial policies of insurance issued by Progressive.

Z. "Policyholder" means the primary named insured on a Policy where Progressive obtained a Consumer Report in connection with the underwriting or rating of the Policy.

AA. "Preliminary Approval Date" shall mean the date of the Order preliminarily approving this Settlement as contemplated by Article III.C.

3

BB.  "Prior Settlement" shall mean the settlement previously reached by the parties herein, dated July 23, 2004, and rejected by the Court in its order of February 23, 2005.

CC.  "Progressive", "Defendants" shall mean The Progressive Corporation, Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, Progressive Classic Insurance Company, Progressive Direct Insurance Company (formerly known as Progressive Halcyon Insurance Company), Progressive Universal Insurance Company of Illinois, Mountain Laurel Assurance Company, National Continental Insurance Company, Progressive Hawaii Insurance Corporation, Progressive American Insurance Company, Progressive Bayside Insurance Company, Progressive Mountain Insurance Company, Progressive Northeastern Insurance Company, United Financial Casualty Company, Progressive Gulf Insurance Company, Progressive Home Insurance Company, Specialty Risk Insurance Company, Progressive Max Insurance Company, Progressive Consumers Insurance Company, Progressive West Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Paloverde Insurance Company, Progressive Express Insurance Company, Progressive Premier Insurance Company of Illinois, Progressive Southeastern Insurance Company, Progressive County Mutual Insurance Company, Progressive Michigan Insurance Company, Progressive Marathon Insurance Company, and Progressive Security Insurance Company, and their affiliated companies.

DD.  "Quotation Recipient" means an individual who obtained a no obligation quotation from Progressive and did not purchase a Policy.

EE.  "Settlement Effective Date" shall be the date on which the time to appeal the Final Judgment has expired with no appeal having been taken; or if an appeal is sought from the Final Judgment, the day after the judgment is affirmed or the appeal is dismissed or denied, and the Final Judgment is no longer subject to further appellate review.

FF.  "Settlement" and "Settlement Agreement" shall mean this Amended Settlement Agreement and the obligations and duties created hereunder.

GG.  "Term" shall mean each discrete period of insurance coverage as shown on a Policy's declaration page.

HH.  "Website" shall mean a website with the address www.FCRANoticeSettlement.com, which has been created and maintained by the Class Administrator at Progressive's expense for the purpose of administering this Settlement, as more fully described in Article IV.D.

**II.     RECITALS**

A.     Plaintiffs in the Consolidated Cases alleged, among other things, that the Defendants violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA") by not providing proper notice of adverse action to Policyholders and Quotation Recipients that were denied insurance coverage, had insurance coverage cancelled or were charged or quoted higher premiums based in whole or in part on information contained in their consumer reports. Plaintiffs sought compensatory damages for negligent violations of the FCRA, punitive damages, and statutory damages for willful violations of the FCRA, and injunctive and declaratory relief.

B.     Defendants have denied the Plaintiffs' allegations and have asserted numerous defenses to Plaintiffs' claims. Defendants do not admit liability to any Class Member and do not admit liability in any case for any of Plaintiffs' allegations. Further, Defendants deny any wrongful conduct toward Plaintiffs or the Class, and assert that the alleged wrongful actions were lawful in all respects.

C.     Plaintiffs and Defendants agree that this Settlement Agreement and the settlement reflected herein represent a compromise settlement of disputed claims, and that neither the settlement, this Settlement Agreement, the releases set forth in Article VII, nor any consideration therefore, nor any actions taken to carry out the terms of this Settlement Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability or of the validity of any claim or of any point of law or fact (including but not limited to the propriety of class certification) on the part of any party, and shall not be deemed or construed as an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants.

D.     Lead Counsel, in light of their knowledge of the Consolidated Cases and their experience in the litigation and settlement of other individual and class actions, consider the Settlement to be fair, reasonable, and adequate and in the best interests of all Class Members. The parties and their attorneys have investigated the facts and issues raised by the Consolidated Cases, and have sufficient information to evaluate the Settlement Agreement.  In evaluating the Settlement, Lead Counsel considered the results of discovery, including the documents exchanged by the parties, responses to interrogatories, reports from Plaintiffs' and Defendants' experts, deposition testimony, applicable law and Orders of the Court.  Based upon the discovery, investigation and evaluation of the facts and law relating to the matters set forth in the complaints filed in the Consolidated Actions, Class Counsel has concluded that (i) there are obstacles to overcoming and establishing at trial that Plaintiffs are entitled to damages from the Defendants and the extent of those damages; (ii) the attendant risk of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation could substantially delay or eliminate any meaningful recovery to the Class; (iii) there are liability questions raised by the Defendants in their motion for summary judgment; (iv)  there will be challenges

5

proving willful conduct by the Defendants; (v) there is a risk of non-certification of the class; (vi) the desirability of proceeding with the settlement promptly and in accordance with its terms is substantial; and (vii) resolution of the litigation as set forth in the Settlement Agreement is in the best interest of the Class.

E. Although the Defendants deny the allegations in the complaints and deny any and all liability with respect to any and all facts and claims alleged, the Defendants nonetheless consider it desirable that the litigation now be settled and dismissed with prejudice in accordance with the provisions of the Settlement Agreement because (i) it will halt the substantial expense, inconvenience, burden and uncertainties associated with protracted litigation; (ii) finally put to rest the claims raised in the litigation; (iii) there are liability questions raised by the Plaintiffs in their motion for summary judgment; and (iv) it will confer a substantial benefit upon the Class and the Defendants including, without limitation, the avoidance of further expense, diversion of resources and distraction and disruption of personnel due to the litigation.

F. Arms' length settlement negotiations took place between Class Counsel and counsel for the Defendants. This Settlement Agreement is the result of those arms' length negotiations.

G. This Settlement Agreement, which embodies all of the terms and conditions of the settlement between Defendants and the Class, is subject to the preliminary and final approval of the Court.

### III. MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

A. Plaintiffs will move the Court for certification, for settlement purposes only, of the Class (defined below) pursuant to Rule 23(b)(2) and (b)(3), Federal Rules of Civil Procedure.

B. The parties agree to recommend that the Court approve the Settlement. The parties shall also recommend to the Court that the firm of James Hoyer Newcomer & Smiljanich, P.A. be appointed as Lead Counsel for the Settlement pursuant to Rule 23, Federal Rules of Civil Procedure.

C. Lead Counsel shall file a motion for preliminary approval of the Settlement Agreement, seeking entry of the form of order attached as Exhibit E. Lead Counsel shall also file a motion for approval of the form of Notice, the Notice Plan, the setting of deadlines for objections and requests for exclusion, and the scheduling of a final fairness hearing at which the Court will decide whether to grant Final Judgment to the proposed Settlement and whether to enter the Final Judgment. Class Counsel and Defendants shall request that the Court hold a hearing on the motion for preliminary approval.

D. After the Notice Plan is implemented, Lead Counsel shall file a Motion for an Order Approving and Adopting Settlement, Dismissing the Consolidated Cases With Prejudice, and Directing Entry of Final Judgment; a copy of the proposed

form of Order granting said motion is attached as Exhibit F, and a copy of the proposed form of Final Judgment is attached as Exhibit G. The Parties and their counsel shall in good faith support the prompt adoption of this Settlement Agreement and the supporting papers filed by Class Counsel and shall undertake any and all efforts that in good faith are necessary and appropriate to ensure the Settlement Agreement's preliminary approval, approval and implementation of the Notice Plan, and final approval of the Settlement.

### IV. DEFINITION OF SETTLEMENT CLASS, NOTICE PLAN AND CLAIM REQUIREMENTS

#### A. Definition of Settlement Class

For purposes of settlement, "Class Members" or "Class" shall mean:

All residents of the United States of America who are members of Sub-Class A or Sub-Class B, defined as follows:

Sub-Class A: shall include all Current Policyholders and Former Policyholders where (i) such Policyholders would have received a lower premium rate from Progressive or would not have had a policy canceled but for the information contained in a Consumer Report and (ii) the Policy inception date for the Current Policyholder or Former Policyholder occurred between January 1, 1997 and December 1, 2004;

Sub-Class B: shall include all Quotation Recipients from January 1, 1997 to the Preliminary Approval Date.

#### B. Mailed Notice and Credit Brochure

1. In the event that the Court preliminarily approves the Settlement Agreement and the Notice Plan, within 45 days, or such other period of time to which the Parties agree in writing and the Court approves, Progressive shall at its own expense mail the court-approved Mailing Notice to Class Members in Sub-Class A who currently have a Policy or who had a Policy in effect at any time since January 1, 2002. The Mailing Notice shall be mailed to the last known addresses of each such Sub-Class A Member. Prior to mailing the Mailing Notice, Progressive shall promptly run all addresses through the National Change of Address Database, and adjust mailing addresses accordingly. The Mailing Notice may be sent by standard mail.

2. The Mailing Notice shall include a claim form (the "Claim Form") that Class Members may use to receive the benefits provided under Article V.B of this Settlement Agreement.

   a. Class Members shall receive a Mailing Notice as set forth in Exhibit C.

    b. Class Members who previously received a Notice of Settlement in connection with the Prior Preliminary Approval Order and who submitted an Original Claim Form requesting a copy of their Credit Report need not make another claim to participate in the settlement benefits provided in this amended proposed class action settlement, but these Class Members will need to make an election if they wish to now either exclude themselves from the Class or exclude themselves from making a claim to participate in the settlement benefits.

  3. The Mailing Notice shall set forth a Website address, www.FCRANoticeSettlement.com, which may also be used by Class Members to obtain instructions on how to electronically make a claim for the benefits provided under Article V.B (the "Electronic Claims Process"). Further information regarding this Website is set forth in Article IV.D.

  4. In lieu of standard mail, Progressive may send the contents of the Notice by Internet E-mail to any Class Member for whom Progressive has a current E-mail address, and with whom Progressive regularly communicates by Internet E-mail.

  5. All recipients of the Mailing Notice shall also receive with the Settlement Notice a credit brochure, in the form attached hereto as Exhibit H, providing information on the management of Credit Reports by individuals.

**C. Publication Notice**

  1. In the event that the Court preliminarily approves the Amended Settlement Agreement and the Notice Plan, within 60 days or such other period of time to which the Parties agree in writing and the Court approves, Progressive shall provide Notice to all Class Members through publication of the Publication Notice as set forth in Exhibit D. The Publication Notice shall be published once in Parade Magazine, USA Today, USA Weekend, and Vista.

  2. The Publication Notice will include the Claim Form and a Website address, www.FCRANoticeSettlement.com, which describes the Electronic Claims Process. Further information regarding this Website is set forth in paragraph D of this Article.

**D. Internet Website**

  1. The Class Administrator shall maintain a Website with the URL address [www.FCRANoticeSettlement.com](www.FCRANoticeSettlement.com) (the "Website"). Said Website shall be maintained by the Class Administrator at Progressive's expense, and Class Counsel shall have the ability to review the activity on the Website.

2. The Website shall be used as an additional means of providing information regarding the Settlement to all Class Members, and shall provide an additional means of allowing Class Members to present claims for benefits as set forth in this Settlement Agreement.

3. The Website shall have information as to the applicable procedures for Class Members who wish to exclude themselves from the settlement or wish to remain in the Class and object to the settlement.

4. The Website shall have information about and access to a separate website to be maintained by Class Counsel, which Website shall provide information from Class Counsel to Class Members as to their rights under the applicable consumer laws regarding the Fair Credit Reporting Act, and information as to the importance of insuring that accurate information is contained in consumer credit reports.

### E. Claim Requirements

In order to make a claim for the benefits provided under Article V.B of the Agreement, a Class Member must submit the claim on a timely basis in accordance with the provisions of the Claim Form or the Electronic Claims Process and must provide his or her first and last name, middle initial, signature, current address, former address(es) for the past 2 years, social security number (for those Class Members receiving Publication Notice only and additionally for those Class Members whose social security number is not on file and is needed for purposes of proper identification), telephone number, date of birth, and (if known) the policy number of the Policy. Progressive will have no obligation to provide any Class Member with free Credit Information if the claim completed with all required information is not submitted on a timely basis. In addition, all Class Members shall be required to formally acknowledge, under penalty of perjury, that he or she had a Policy with or received a no obligation quotation from Progressive.

## V. SETTLEMENT RELIEF

The relief to be provided to Class Members shall be as follows:

### A. Practice Change

As of the Notice Cutoff Date, Progressive Defendants instituted new procedures in all states where Policies are issued. The new procedures provide for Adverse Action Notices to be provided to all persons who were the subjects of adverse action as defined by 15 USC § 1681(k)(1)(B)(i). Such notices affirmatively inform recipients that they have been subject to adverse action as a result of an adverse credit report and contain such additional information as is required by the FCRA. Progressive Defendants will continue to provide such notices unless and until they are expressly relieved of such obligation, either by amendment to applicable statutes or by decision of a court of competent

jurisdiction. Progressive Defendants further agree that henceforth they shall provide an Adverse Action Notice to all New Policyholders who would have received a lower premium rate but for information obtained in a Consumer Report. It is agreed and understood between the parties that the New Adverse Action Procedures used by Progressive are subject to change from time to time provided that, any changes to the New Adverse Action Procedures comply with applicable state and federal law. Progressive acknowledges, however, that as long as the FCRA or federal law requires it, any changes in Adverse Action Procedures used by Progressive shall always provide for Adverse Action Notices to all New Policyholders who would have received a lower premium rate but for information obtained in a Consumer Report, and that any changes in such procedures shall comply with all applicable statutes regulating the use of Consumer Reports in setting insurance premiums.

**B.     Free Copy of Credit Report and PLUS Score®**

1.     Progressive agrees as set forth below to provide one copy of the Credit Information, without charge to any Class Member who timely submits a properly completed claim in accordance with the Notice. Said Class Members may exercise their right to obtain a free copy of their Credit Information from Experian by timely mailing the completed Claim Form contained in the Notice to the Class Administrator at the address provided on the Claim Form, or by timely submitting a claim electronically through the Website. Each Class Member shall be entitled to only one free copy of their Credit Information regardless of the number of Policies purchased or no obligation quotations received. The Initial Credit Report is in addition to any other Consumer Report to which the Consumer is otherwise entitled to receive under any applicable state or federal law.

2.     Class Members who previously submitted a Claim Form in connection with the Prior Settlement, shall be deemed to have exercised their right to obtain Settlement Relief, unless they indicate otherwise by timely excluding themselves from the Class or from receipt of settlement benefits.

3.     Progressive shall administer the ordering of free Credit Information and shall communicate to Experian the names and addresses of all Class Members who have requested their Credit Information by mail, including those Class Members who previously submitted a Claim Form in connection with the Prior Settlement and who have not timely excluded themselves from the Class or from receipt of benefits. Class Members seeking Credit Information electronically shall be provided instructions and an Internet link on the Website. Progressive shall have the right, but not the obligation to verify the identities of those persons making a claim for Settlement Relief with its list of qualified Class Members or by using other methods that accurately verify the identity of

Class Members. Class Counsel shall have the right to ensure that the Class Members are receiving any and all benefits pursuant to the Settlement Agreement. This shall include the specific procedures outlines in paragraph VI. below.

4. Progressive shall cause Experian to provide Credit Information to each Class Member who timely mails or electronically submits a Claim Form to Progressive. Irrespective of the manner a Class Member uses to request Credit Information, a Class Member may receive the Credit Information electronically or in hard copy, at Class Member's option. Within 21 days after the Settlement Effective Date, for Class Members who elect to receive Credit Information electronically, Progressive shall e-mail Class Members a secured link to Experian. This link may be used anytime within the 180 days after the Settlement Effective Date to order Credit Information. For those Class Members who do not provide a valid e-mail address, Progressive shall mail Credit Information to them within 60 days after the Settlement Effective Date. Progressive will provide Class Counsel with Class Member response rates.

5. Class Counsel shall have the right to review or audit the procedures used by Progressive to ensure that the settlement is administered in compliance with the Settlement Agreement, including the auditing and objection processes set forth in Article VI. below. The parties shall attempt in good faith to resolve any dispute over the scope of any review or audit. Any such dispute that the parties are unable to resolve shall be presented to the Court for resolution.

**C.    Credit Report Correction Process**

All Class Members shall possess the right to engage in the following Credit Report Correction Process, including the statutory rights they possess by virtue of the FCRA.

1. A Class Member who has requested and received a copy of his or her Credit Information from Experian pursuant to paragraph VI.B.1 shall have a maximum of thirty (30) days from receipt of his or her Credit Information to notify Experian that he or she is disputing the completeness or accuracy of any item or information contained in his or her Initial Credit Report (hereinafter, such person shall be called a "Correction Participant"). If a Class Member does not notify Experian of a dispute within thirty (30) days of receiving his or her Credit Information, the Class Member shall not be entitled to seek a potential premium adjustment nor entitlement to damages as set forth below. Pursuant to 15 U.S.C. § 1681i of the FCRA, Experian shall have 30 days (or such longer period as may be available under the FCRA) beginning on the date it is notified of the dispute, to complete a Credit Report Correction Process.

11

2. The Credit Report Correction Process shall be undertaken by Correction Participants through Experian, and Experian staff will follow all normal procedures for consumer reporting agencies for correction of such reports as set forth in the FCRA. The Parties agree that Progressive shall take commercially reasonable steps to ensure that Experian has the appropriate staffing level necessary to handle the volume of Correction Participants participating in this Credit Report Correction Process through Experian's normal procedures. This shall include the availability of a toll-free number at Experian for use by Class Members in any Correction Process, to be administered by Experian in its ordinary course of business. Progressive shall obtain from Experian on a weekly basis for a period of fourteen weeks after the Settlement Effective Date, a report as to the volume of telephone calls received by Experian, and shall regularly report such results to Class Counsel.

3. A Correction Participant who has disputed the accuracy of information in his or her Initial Credit Report shall receive, if applicable, a Corrected Credit Report, free of charge, at the completion of the statutorily required investigation by Experian.

4. The parties agree that Experian is not a party to this Settlement Agreement, and that any and all obligations of Experian in resolving disputes are pursuant to Experian's legal obligations pursuant to 15 U.S.C. § 1681i. Class members retain any and all rights they may have against Experian for any failure by Experian to fulfill its obligations under the law.

**D.    Class Payment Process**

A member of Sub-Class A (a) who has received a corrected credit report ("Corrected Credit Report"), or (b) who provides Progressive with credible evidence that, during the relevant period, an inaccurate credit report for the Correction Participant was being reported by the credit reporting agencies (hereinafter "Credible Evidence") shall have the right to participate in a determination of whether he or she is entitled to a class payment as described in this section.

1.      The Corrected Credit Report or Credible Evidence shall be evaluated by Progressive under the rating plan in effect at the time of the application in the state in which the policy was issued.

   a.      Progressive shall determine, using only the appropriate rating plan, whether the Corrected Credit Report or the Credible Evidence has improved the Financial Responsibility Category for each Policy issued to a Correction Participant and, if so, Defendants shall pay the Correction Participant in accordance with the schedule below.

   b.      For any Policy other than a Policy currently in force and a prior Term of Policies currently in force, if the Corrected Credit Report improves the Financial Responsibility Category and affects:

      i.      one Policy Term, the total payment to the Correction Participant shall be $75;

      ii.     two Policy Terms, the total payment to the Correction Participant shall be $150;

      iii.    more than two Policy Terms, the total payment to the Correction Participant shall be $225.

   c.      For Correction Participants who are Current Policyholders, if the Corrected Credit Report improves the Financial Responsibility Category, Progressive shall adjust the current premium of the Correction Participant based upon the new Financial Responsibility Category. Progressive shall also apply a premium credit equal to the difference between the premium paid for the Policy and the adjusted premium for the current Term.

   d.      Within 30 days of the completion of the Correction Process Progressive shall issue to such Correction Participant a draft (if the Correction Participant is no longer a Progressive policy holder), or a premium credit (if the Correction Participant is currently a Progressive policy holder) in the amount required as set forth above.  No interest will be paid on any claim.

      2.    Should the Financial Responsibility Category of the Correction Participant not improve, Progressive will so inform the Correction Participant.

      3.    Progressive agrees that no premiums will be increased on current Policies for the current policy period of any Class Members based on such Corrected Credit Reports even if the Corrected Credit Report would justify such an increase.

## VI. SETTLEMENT COMPLIANCE PROCEDURES

A.    Throughout the Credit Report Correction Process and the Class Payment Process set forth in Paragraphs V.C and V.D. above, Class Counsel shall represent the interests of all Class Members with regard to Progressive's compliance with all settlement obligations herein.

B.    If any Class Member disputes the results of Progressive's re-rating, damages calculation, or premium reduction decision, Class Counsel shall conduct an audit of the process to determine whether Progressive has made decisions in compliance with its obligations under this Settlement Agreement. Progressive shall make available to Class Counsel any materials used in connection with such determination so as to allow Class Counsel to verify compliance with its settlement obligations.

C.    If after such audit the affected Class Member and Progressive disagree about whether Progressive complied with the terms of the Settlement Agreement, the dispute shall be brought to the attention of the Court by Class Counsel on behalf of the Class Member for final and binding resolution in accordance with the terms of this Settlement Agreement.

## VII. RELEASES

A.    Class Members that (1) participate in the Settlement, or (2) do not timely exclude themselves from the Settlement shall fully and forever release, acquit, and forever discharge Progressive, its agents, assigns and others from any and all claims of every kind, type and description, known or unknown, direct or consequential, foreseen or unforeseen, arising from January 1, 1997 to the date of the Order preliminarily approving the Settlement, that Class Members ever had, now have, or hereafter may have arising out of Progressive's obtaining and using any Consumer Report in its underwriting and/or rating of Policies, or any state laws or regulations that impose obligations on users of Consumer Reports, like Progressive, that are similar, or related to, the obligations imposed on Progressive under the FCRA.

B.    Nothing in this Release shall preclude any Class Member from recovery of any damages caused by any non-compliance by Progressive with the procedures of this Settlement.

14

C. Notwithstanding the foregoing, the releases and discharges set forth in paragraph VII.A. above do not apply to any alleged claims under Article 21.21-8 and/or Chapter 544 of the Texas Insurance Code asserted in the case styled, *Curry, et al. v. Progressive Casualty Ins. Co., et al.* and filed in the District Court for Travis County, Texas, 20th Judicial Circuit.

## VIII. ATTORNEYS FEES AND COSTS

As an additional benefit to Class Members, Progressive shall pay collectively to all Class Counsel reasonable attorneys' fees and costs, to be paid in accordance with the following provisions:

A. Progressive agrees to pay a total of up to $3,000,000 in fees and expenses. Class Counsel agrees to seek fees and costs not to exceed $3,000,000, and Progressive agrees not to object to payment of fees and costs up to the same amount. If the Court awards fees and costs in excess of $3,000,000, Progressive may void this Amended Settlement Agreement. Fees and costs awarded by the Court shall be paid to Lead Counsel, for distribution to all Class Counsel by Lead Counsel. Progressive and the Released Parties shall not be liable for any additional fees, costs, expenses or sums of any other kind of Class counsel, any other counsel of any Plaintiffs, or any other Class Member in connection with the Actions beyond those expressly provided in this Stipulation of Settlement.

B. The total amount in fees and costs awarded by the Court pursuant to paragraph VIII.A. shall be paid by Progressive as follows:

1. As to one-third ($1/3^{rd}$) of the total amount of fees and costs awarded by the Court pursuant to paragraph VIII.A., Progressive will pay such partial amount by funds wired to James, Hoyer, Newcomer & Smiljanich, PA within 15 days of the Court's entry of the Final Judgment and Order, subject to compliance with the terms of the Stipulation of Settlement and the provisions of the promissory notes required under subparagraphs VIII.B.(1)(a) and (b).

    a. The Parties agree, and the Final Judgment and Order will provide, that Class Counsel shall, without need for motion by Progressive or further notice, within 5 days after issuance of (i) a mandate reversing the Final Judgment and Order on appeal; or (ii) an order terminating the Stipulation of Settlement or otherwise causing the Stipulation of Settlement to become null and void for any other reason, return to Progressive the full amount of all such partial attorneys' fees and expenses awarded to Plaintiffs' counsel, plus interest incurred calculated at the Florida statutory rate as of the initial payment by Progressive. Lead Class Counsel shall provide to Progressive a promissory note guaranteeing the return of funds received by Class Counsel if the funds are required to be returned as required by this provision.

15

      b.    The Parties also agree, and the Final Judgment and Order shall also provide, that Class Counsel must, without need for motion by Progressive or further notice, within 5 days after issuance of a mandate or order reducing the amount of attorneys' fees and/or expenses awarded to Class Counsel, return to Progressive the proportional amount by which the attorneys' fees and/or expenses were reduced, (i.e., one third of any such reduction in the total fees and expenses awarded) plus interest on said amount incurred calculated at the Florida statutory rate as of the date the fees and/or expenses were initially paid by Progressive. Lead Class Counsel shall provide to Progressive a promissory note guaranteeing the return of funds received by Class Counsel if the funds are required to be returned as required by this provision.

      c.    The foregoing repayment obligations shall be enforceable by any means, including the contempt power of the Court, and the Court shall retain jurisdiction to enter all orders necessary to enforce such obligations. Nothing herein shall preclude Progressive from seeking enforcement of the terms of this Section and/or the promissory note in a court of competent jurisdiction, including, but not limited to, the state and federal courts of the State of Florida to which Class Counsel, Progressive and Progressive's Counsel hereby submit to jurisdiction.

2.    As to another one third (1/3rd) of the total amount of fees and costs awarded by the Court pursuant to paragraph VIII.A., Progressive will pay such additional partial amount by funds wired to James, Hoyer, Newcomer & Smiljanich, PA within 15 days of the Settlement Effective Date.

3.    As to the final one third (1/3rd) of the total amount of fees and costs awarded by the Court pursuant to paragraph VIII.A., Progressive will pay such final partial amount by funds wired to James, Hoyer, Newcomer & Smiljanich, P.A. within 15 days of the conclusion of the procedures set forth in paragraphs V. and VI. herein.

## IX.    FINALITY

A.    Progressive may, by notifying Lead Counsel in writing, void this Amended Settlement Agreement in the event that Progressive determines, within ten (10) days of the deadline for Class Members to exclude themselves as described in the Notice, and in its sole and absolute discretion, that there are an unacceptable number of exclusions, or within 10 days after the Court certifies a class in any of the Consolidated Cases.

B. In the event that Progressive shall void the Amended Settlement Agreement in accordance with its terms, or if the Court refuses to approve this Amended Settlement Agreement or any material part or approves the Amended Settlement Agreement with a material change, or the Final Judgment is not entered, or the Court's approval of this Amended Settlement Agreement or the Final Judgment is set aside, in whole or in material part on appeal, then this Amended Settlement Agreement in its entirety shall become null and void, unless the parties promptly agree in writing to proceed with the settlement consistent with the opinion issued by the Court under which the Settlement Agreement would otherwise become null and void. An appeal from any order approving the payment of fees and costs that seeks to reduce amounts to be paid to Class Counsel, shall not affect the finality of approval of the Amended Settlement Agreement.

C. In the event this Amended Settlement Agreement is or becomes null and void in its entirety, the Parties shall act to put each and every party in the position such party would have been in as if this Amended Settlement Agreement had not been entered into.

## X. ADMINISTRATION COSTS

Progressive shall be responsible for the cost of the Notice, the Website, and the other administration costs as set forth herein, except for the cost of maintaining the website described in paragraph IV.D.4. above.

## XI. DENIAL OF LIABILITY

A. Nothing herein contained, nor the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, fault, or wrongdoing on the part of Progressive or any of its employees, agents, contractors, affiliates, attorneys or related parties. Plaintiffs understand that Progressive denies any liability and that this Settlement Agreement has been entered into with the intention of furthering the goals of the FCRA and avoiding further dispute and litigation with its attendant inconvenience and expense. Progressive acknowledges, however, that as a direct result of the litigation brought by Plaintiffs herein Progressive has changed its overall compliance with the FCRA, including the practice changes set forth in paragraph V.A. above.

B. Plaintiffs acknowledge and agree that the practice changes set forth in this Agreement shall not be deemed or construed as an admission or as evidence that any of Progressive's current or former practices are, or were, not in compliance with FCRA or any other applicable laws or regulations. By agreeing to these proposed practice changes, Progressive shall not be deemed to have waived, or to be estopped from, asserting any and all legal defenses available to it in connection with any Claim based on, or in any way relating to, these proposed practice changes.

**XII.   PUBLICITY**

No Plaintiff nor any Class Counsel shall make or distribute any press release or initiate any public statement intended to be disseminated through the press or other media about this Settlement, the merits of any Party's position in the Action, or the conduct of the Defendants.


Counsel for Plaintiffs                                              Counsel for Progressive

By: _____                 By: _____
          Terry A. Smiljanich                                                    Barry Richard

Dated: _____                                       Dated: _____

## XII. PUBLICITY

No Plaintiff nor any Class Counsel shall make or distribute any press release or initiate any public statement intended to be disseminated through the press or other media about this Settlement, the merits of any Party's position in the Action, or the conduct of the Defendants.

Counsel for Plaintiffs

By: _____
Terry A. Smiljanich

Dated: 5/22/06

Counsel for Progressive

By: _____
Barry Richard

Dated: 5/19/2006