IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

IN RE: THE PROGRESSIVE
INSURANCE CORPORATION
UNDERWRITING AND RATING
PRACTICES LITIGATION

CASE NO. 1:03-cv-01519 MMP

_____

ORDER APPROVING AND ADOPTING AMENDED SETTLEMENT,
DISMISSING CONSOLIDATED CASES WITH PREJUDICE
AND DIRECTING ENTRY OF FINAL JUDGMENT
_____

This matter is before the Court on the Consolidated Plaintiffs' Motion for Final Approval of Amended Settlement and for Final Judgment, which was preliminarily approved in Doc. 239. A Fairness Hearing was held on August 23 and 24, 2006, at which the Court heard and considered the position of the Parties, their respective counsel, and any Class Members and objectors that appeared to be heard on the matters presented at the Fairness Hearing. This multidistrict litigation (the "Action") arises from the following Consolidated Cases:

    (a)    Cathryn Smith, Margaret Jones, and Laura Sprague v. The Progressive Corporation, et al., Case No. 1:00-CV-210-MMP (N.D. Fla.);

    (b)    Sharele Dikeman et al.  v. The Progressive Corporation, Case No. CV 01-1465 JE (D. Ore.);

(c)     Sharele Dikeman et al. v. Progressive Halcyon, et al., Case No. 3:03cv00302 (D. Ore);

(d)     Paul K. Cooley v. Progressive Insurance Co., Case No. CV 02 2384-S  (W.D. La.);

(e)     Timothy James Carlson v. Progressive Insurance Co., Case No. 02-CV-2552 (N.D. Tex.);

(f)     Gloria Warren v. Progressive Casualty Ins. Co., Case No. 3:03-1176 (N.D. Ala.);

(g)     Seth Silverman v. The Progressive Corp., et al., Case No. 4:05-CV-1647 (S.D. Tex.);

(h)     Ruby Johnson v. The Progressive Corp., et al., Case No. 2:05-CV-1900 (E.D. La.); and

(i)     Julius Dunmore v. The Progressive Corp., Case No. 1:05-CV-150-SPM (N.D. Fla.)

Plaintiffs in the Consolidated Cases alleged, among other things, that the Settling

Defendants[1] violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA") by not

providing proper notice of adverse action to Policyholders and Quotation Recipients that were

denied insurance coverage, had insurance coverage cancelled or were charged or quoted higher

---

[1]  The Settling Defendants are: The Progressive Corporation, Progressive Casualty Insurance Company, Progressive Specialty Insurance Company, Progressive Classic Insurance Company, Progressive Halcyon Insurance Company, Progressive Universal Insurance Company of Illinois, Mountain Laurel Assurance Company, National Continental Insurance Company, Progressive Hawaii Insurance Corporation, Progressive American Insurance Company, Progressive Bayside Insurance Company, Progressive Mountain Insurance Company, Progressive Northeastern Insurance Company, United Financial Casualty Company, Progressive Gulf Insurance Company, Progressive Home Insurance Company, Specialty Risk Insurance Company, Progressive Max Insurance Company, Progressive Consumers Insurance Company, Progressive West Insurance Company, Progressive Northern Insurance Company, Progressive Northwestern Insurance Company, Progressive Preferred Insurance Company, Progressive Paloverde Insurance Company, Progressive Express Insurance Company, Progressive Premier Insurance Company of Illinois, Progressive Southeastern Insurance Company, Progressive County Mutual Insurance Company , Progressive Michigan Insurance Company, Progressive Marathon Insurance Company, and Progressive Security Insurance Company (also collectively referred to as "Progressive").

premiums based in whole or in part on information contained in their consumer reports.

Plaintiffs sought compensatory damages for negligent violations of the FCRA, punitive damages,

and statutory damages for willful violations of the FCRA, and injunctive and declaratory relief.

By Order dated April 15, 2003, the Judicial Panel on Multidistrict Litigation transferred the

Consolidated Cases to this Court for coordinated and consolidated pre-trial proceedings pursuant

to 28 U.S.C. § 1407.  By Order dated June 23, 2006, this Court (i) preliminarily approved the

amended settlement of this Action, (ii) certified a class for settlement purposes, (iii) approved

and directed issuance of a form Notice to the Class, and (iv) set a Fairness Hearing in this

Action.  Notice was issued to the following Class Members (as certified by the Court for

settlement purposes):

> All residents of the United States of America who are members of Sub-Class A or
> Sub-Class B, defined as follows:
>
> Sub-Class A: shall include all Current Policyholders and Former Policyholders
> where (i) such Policyholders would have received a lower premium rate from
> Progressive or would not have had a policy canceled but for the information
> contained in a Consumer Report; and (ii) the Policy inception date for the Current
> Policyholder or Former Policyholder occurred between January 1, 1997 and
> December 1, 2004;
>
> Sub-Class B: shall include all Quotation Recipients who received a no obligation
> quote from January 1, 1997 to the Preliminary Approval Date.

Assuming, without deciding, that the language used by the Defendant in its written

notification did not comport with the specificity required by the Fair Credit Reporting Act, the

question becomes one of damages.  Damages under FCRA are recoverable only if the action of

the user of the consumer report, in this instance, Progressive, "willfully fails to comply with any

requirement imposed under this subchapter . . . ."[2]  15 U.S.C. § 1681n(a).  If willfulness is found,

then the damages recoverable are (1) actual, or (2) statutory of not less than $100.00 and not

more than $1,000.00, and (3) punitive.  See 15 U.S.C. § 1681n(a)(1)-(2).  The parties and

objectors agree that there is no evidence any class member suffered any actual damages and that

the evidence does not establish the basis for imposition of punitive damages.  Therefore the only

claim for money damages available to the class is one for statutory relief.

        The evidence pointed to by the class members, including the objectors, to establish that

the defendant "willfully" violated the FCRA requirements is premised on an October 19, 2000,

letter from an attorney for the Federal Trade Commission, Sandra M. Wilmore, directed to Barry

---

        [2] In Reynolds v. Hartford Financial Services Group, Inc., 435 F.3d 1081 (9th Cir. 2006), cert.
granted, 75 U.S.L.W. 3162, 75 U.S.L.W. 3129, 75 U.S.L.W. 3035 (U.S. Sept. 26, 2006) (No. 06-100),
the Ninth Circuit defined the term "willfully" in 15 U.S.C. § 1681n as follows:

                We begin by following all five of the other circuits that have addressed the issue of the
        mens rea that is required with regard to the act that allegedly violates FCRA and hold that the act
        must have been performed "knowingly and intentionally."

 . . .

                Next, we address the more difficult question: What is the nature of the mens rea that is
        required with respect to the law? . . . Specifically, we hold that as used in FCRA "willfully"
        entails a "conscious disregard" of the law, which means "either knowing that policy [or action] to
        be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless
        disregard of whether the policy [or action] contravened those rights."

 . . .

                In sum, if a company knowingly and intentionally performs an act that violates FCRA,
        either knowing that the action violates the rights of consumers or in reckless disregard of those
        rights, the company will be liable under 15 U.S.C. § 1681n for willfully violating consumers'
        rights. A company will not have acted in reckless disregard of a consumers' rights if it has
        diligently and in good faith attempted to fulfill its statutory obligations and to determine the
        correct legal meaning of the statute and has thereby come to a tenable, albeit erroneous,
        interpretation of the statute. In contrast, neither a deliberate failure to determine the extent of its
        obligations nor reliance on creative lawyering that provides indefensible answers will ordinarily
        be sufficient to avoid a conclusion that a company acted with willful disregard of FCRA's
        requirement. Reliance on such implausible interpretations may constitute reckless disregard for
        the law and therefore amount to a willful violation of the law.

 435 F.3d at 1097-99.
Case No: 1:03-cv-01519

J. Cutler of Baker & Hostetler, as attorney for Progressive.  That letter is attached to this order

rather than fully replicate it verbatim.  To counter any claim of a willful violation of FCRA, the

corporate defendant herein introduced a reply letter dated November 27, 2000, from Peter J.

Albert, corporate attorney for Progressive, to Ms. Wilmore.  Again, that reply letter is attached to

this order.  In the reply, Mr. Albert, while denying any failure to comply, fully answered the

inquiry, explaining why certain language was used, and stated: "Again, while we feel our

procedures have always satisfied the Section 615(a) requirements, in light of your questions, I

have arranged to include a disclosure substantially similar to the following on these

supplementary notices."  The letter next sets forth the language changes.  Mr Albert's letter then

concluded with the following: "I trust that the above is responsive to your inquiry, and that

Progressive's revised notice procedures are satisfactory. If you have any questions, please feel

free to contact me."  The evidence presented was that the Federal Trade Commission did not

reply to the letter, but simply closed its inquiry or review.


In determining whether the settlement agreed to between the Class Plaintiffs and

Defendants is "fair," the benefits derived from the settlement agreement have to be weighed

against the relative chance for winning or losing on the merits, as viewed from the perspective of

the two parties.  Considering the written memorandum, the testimony and evidence presented

during the fairness hearing, as well as argument of counsel for the Class Plaintiffs, the

Defendants, and for the objectors, "willfulness" on the part of Progressive is seriously debatable

and the agreed to settlement reflects that uncertainty.[3]  Accordingly, an order approving the

---

[3]  The objectors argue that only a cash settlement to each class member would be a "fair"
settlement. However, argues the Defendants' attorney, the award for any statutory violation, in this case,
may present a due process problem. With a class size of ten million, an award of only ten dollars per class
member would amount to one hundred million dollars; an award of one hundred dollars per class member

settlement will be entered.[4]  The Court finds that the New Adverse Action Procedures, as

would amount to one billion dollars, all in a case where no member of the class sustained any actual damage.

[4]  The Settlement Agreement, which was preliminarily approved by the Court in Doc. 239, has been amended by the parties to reflect a change in Experian's business practices.  Under the Settlement Agreement as preliminarily approved, class members were to receive an Experian Plus Score either via the Internet or the mail.  As Experian no longer offers Experian Plus Scores in written form, the parties have amended the Settlement Agreement to provide class members without email addresses with a comparable written credit score from Experian, which is the Experian VantageScore.  The primary difference between the Experian Plus Score and the Experian VantageScore is the algorithm used to compute the credit score–the former is a formula unique to Experian while the latter is a common formula used by all three major credit reporting agencies.

Experian describes its Plus Score as "a numeric representation of financial behavior, based upon information found in a credit report."  Experian, National Score Index, *available at* <http://www.nationalscoreindex.com>. A Plus Score ranges from 330 to 830, with a higher score representing a lower credit risk.  In its sample Plus Score report, Experian states: "This PLUS Score is based on information from your Experian credit report. Your PLUS Score is calculated using the information in your credit report. Since information often differs among your three bureau reports, your PLUS Scores based on those reports will also vary." Experian, Sample Plus Score and Credit Report, *available at* <https://www.myplusscore.com/Message.aspx?PageType ID=1B1SProduct>.

This variation among credit reporting agencies is a central point Experian points to in describing its VantageScore product:

> VantageScore is the first score of its kind to leverage a consistent scoring methodology across all three credit reporting companies to deliver a highly predictive and easy to understand risk score. It is the first single credit scoring model to be developed jointly by the national credit reporting companies. As a result, it leverages the collective expertise of the industry's leading experts on credit data, scoring and analytics to offer greater predictiveness and consistency.

Experian, VantangeScore, *available at* <http://www.experian.com/products/vantagescore.html>.  The VantageScore also employs a different scoring method than the Plus Score, using a score range from 501-990 that measures credit worthiness against the academic scale of A, B, C, D, and F grade intervals, with an "A" score being a super prime credit rating and an "F" score representing a high credit risk.  A VantageScore can be ordered from Experian for $5.95.

Although the VantageScore provides a common scoring model for the major credit reporting agencies, Experian states each of the three credit reporting agencies providing a VantageScore could produce a different credit score due to differential access to information, but that the unified formula will reduce or eliminate the disparities found in other scoring methods.  Maxine Sweet, Experian's Vice President of Public Education, describes how eventually a consumer will have three VantageScores–one from each credit reporting company:

> The unique  thing about the VantageScore is that it uses exactly the same formula for all three credit reporting companies. For that reason, the separate scores from each of the credit reporting companies is much more likely to be the same, or at least much closer.

> Because the same formula is used, any difference in the scores will be caused by differences in the credit report information. For instance, an account that is reported to one company but not the others could cause a small difference. Or, one agency may have updated

described in Article V of the Amended Settlement Agreement, are in compliance with the

requirements of the FCRA.  The Court finds, in accordance with Fed.R. Civ.P. 23(e), that the

Amended Settlement Agreement is fair, reasonable, and adequate.  Considering the years

Plaintiffs' counsel has spent working on this case, the Court further finds that an award of

attorneys' fees and costs in the amount of $3,000,000.00 is fair and reasonable.

There remains an issue of attorney's fees to be awarded to Mr. Smiljanich stemming from

the allegation of "fraud upon the court" asserted by the Caddell Law Firm in Doc. 106.  The

Court did conduct a full evidentiary hearing on this matter and determined that there was no

legal or evidentiary basis for the assertion.  Indeed, charging a member of the bar with fraud

upon the court is very serious and required Mr. Smiljanich to expend  considerable time, effort,

and money to clear his name and his reputation within the legal community from this false

---

account information but the others have not yet received the updates, causing a small difference.

Other scoring systems have similar, but different, formulas for each of the credit reporting companies. Differences in the formulas can create larger disparity in the scores from each of the credit reporting companies.

Experian, Ask Max Credit Advice, *available at* <http://www.experian.com/ask_max/max111506a.html>. Currently, only Experian allows consumers to purchase a VantageScore.

There seems to be no inherent difference in value between a Plus Score and a VantageScore, as both scores are calculated from the same information contained Experian's database, albeit using different algorithms.  The benefit Experian states a VantageScore offers is the ease with which an individual can understand their credit score through the use of the familiar academic grading scale.  However, Experian's Plus Score provides a range that achieves the same effect by charting an individual's credit score along five categories from very poor to excellent.  Comparing the two scales, it is difficult to see how an "A" rating is materially different from an "excellent" rating.

Rather than providing a consumer with information different than that contained in a Plus Score, the VantageScore seeks to eliminate the disparity in credit scores caused by each credit reporting agency computing the scores using different algorithms.  Because as a whole it appears that the difference in value to class members between the two credit scores is at most negligible, the Court finds that the amendment to the Settlement Agreement does not change the analysis of whether the settlement is fair, reasonable, and adequate.

allegation.  The court finds the requested attorney fees of $104,892.50 and costs of $2,598.12,

Doc. 163, are reasonable, grants the motion, and orders Michael A. Caddell and the law firm of

Caddell & Chapman to pay those sums, a total of $107,490.62, to Mr. Smiljanich within 30 days

of the date of this order.  The court will retain jurisdiction of this matter and the attorneys for a

period of 90 days to assure compliance with this court imposed sanction in addition to the

retention of jurisdiction required by the terms of the settlement agreement and judgment entered

thereon.  Accordingly, it is hereby  **ORDERED AND ADJUDGED:**

1.    Plaintiffs' Motion is GRANTED;

2.    The Court gives final approval to, and adopts, the Amended Settlement
      Agreement of the Parties;

3.    The preliminary injunction entered by Order dated June 23, 2006, Doc. 239, is
      hereby made permanent;

4.    This Action is dismissed with prejudice against the Settling Defendants;

5.    This Court retains jurisdiction over this Action for 90 days for purposes of
      enforcing the terms of the Amended Settlement Agreement;

6.    The Clerk of the Court is directed to enter Final Judgment in the form attached
      hereto as Exhibit A;

7.    The letter dated October 19, 2000, from Sandra M. Wilmore, as attorney for the
      Federal Trade Commission, directed to Barry J. Cutler of Baker & Hostetler, as
      attorney for Progressive, is attached to this order as Exhibit B; and

8.    The reply letter dated November 27, 2000, from Peter J. Albert, corporate
      attorney for Progressive, to Ms. Wilmore, is attached to this order as Exhibit C.

**DONE AND ORDERED** this  *3rd* day of January, 2007

s/Maurice M. Paul

Maurice M. Paul, Senior District Judge